CHICAGO AND ILLINOIS MIDLAND RAILWAY COMPANY, Plaintiff-Appellant, v. CRYSTAL LAKE INDUSTRIAL PARK, INC., Defendant-Appellee (Kemper, Fisher, Faust, Lawrence and Company *et al.*, Defendants).

Third District   No. 3—91—0261

Opinion filed February 11, 1992.—Rehearing denied March 25, 1992.

Janet L. Jannusch and Linda L. Laugges, both of Keck, Mahin & Cate, of Peoria (Robert M. Riffle, of counsel), for appellant.

Rudolph J. Westphal, of Peoria, for appellee.

JUSTICE GORMAN delivered the opinion of the court:

This action was brought by plaintiff Chicago and Illinois Midland Railway to condemn approximately 42 acres of land. Following a jury trial, the defendant Crystal Lake Industrial Park, Inc., *et al.*, was

awarded $700,000 as just compensation for the taking of its property. Plaintiff appeals. We reverse and remand.

On May 10, 1990, plaintiff filed an amended complaint to acquire 41.625 acres on the Illinois River so that it could build an industrial harbor railroad port. The property includes a channel that accommodates barges of normal size, a lagoon, an area of some sand and gravel, adjacent railroad sidings, access to a State highway, and utilities.

Plaintiff hired two experts to appraise the property. They prepared written appraisal reports on the property approximately 10 months before trial. Of the three approaches to real estate appraisal, i.e., cost approach, income approach, and comparable sales approach, the appraisers chose the comparable sales approach on which to base their opinions of value. One found five and the other six comparable sales.

Defendant hired one expert appraiser, Robert McQuellon. Defendant disclosed the identity of its appraiser approximately one month before the March 18, 1991, trial. Plaintiff acquiesced in this late disclosure. Plaintiff scheduled a deposition with McQuellon, but this was rescheduled a number of times because he had not completed his appraisal. On March 8, 1991, plaintiff deposed McQuellon. McQuellon did not bring his written report as he was asked to do, but instead brought his handwritten notes. When deposed, McQuellon testified that he was still in the process of working on his appraisal. He promised to deliver a typewritten copy of the appraisal to plaintiff, which he did not do. He stated that he had decided to use the income approach to value the parcel and would not have taken the assignment if he could not have used this approach. He asserted that to use the comparable sales approach, one would need at least three good comparable sales and he believed he could not find any good comparable sales with the exception perhaps of one sale. McQuellon went on to say that he based his appraisal on a 1985 letter of intent to lease between defendant's predecessor and another company. McQuellon stated that he had no independent knowledge of the litigation involving the letter of intent and no independent knowledge whether the amounts allegedly due under the letter of intent were collectible. Furthermore, he stated that he was aware of the gravel content but that he did not incorporate this into his appraisal because he had no way of calculating the amount of material present. He stated that to value the gravel content from an appraiser's standpoint, one would have to have gotten an engineer to calculate exactly how much was there and then determine the cost to remove it and to sell it. Moreover, he

stated that an appraiser would also have to have had a feasibility study performed.

Plaintiff and defendant both filed several motions *in limine*. Defendant moved to exclude evidence of the specific costs of demolishing buildings on the property and the specific cost estimates of work to remedy erosion problems required by the Corps of Engineers (Corps) and any reference to the suit filed by the Corps in regard to those problems. The court granted this motion.

Plaintiff moved to exclude McQuellon's entire direct testimony because his opinion of value was based on a speculative income stream. The court denied the motion to exclude the testimony *in toto* but did exclude the testimony which was based on the income approach. Plaintiff also moved to exclude all of the owner's, Merlin Gunderson's, testimony because Gunderson based his opinion on a speculative income stream. As to the sand and gravel contents, he based his opinion of value on personal observation and on conversations with people in the gravel business. The court denied this motion.

Trial began on Monday, March 18, 1991. On Wednesday, March 20, in response to McQuellon's written appraisal, which was completed Tuesday, March 19, and given to plaintiff on Wednesday, March 20, and which revealed that McQuellon had used a comparable sales approach and a cost approach in appraising the property and had factored in an adjustment for sand and gravel, plaintiff filed a motion *in limine* to bar the expert under Supreme Court Rule 220(d) (134 Ill. 2d R. 220(d)) from testifying to value based on these two approaches. Plaintiff also filed a motion *in limine* to exclude any of McQuellon's testimony as to value based on sand and gravel content under Supreme Court Rule 220(d). The court granted plaintiff's motion to exclude testimony as to value based on the cost approach and denied the motions to exclude valuation testimony based on the comparable sales approach and the sand and gravel content. The court also allowed plaintiff to redepose McQuellon on Thursday, March 21, 1991.

McQuellon stated that on Monday, March 18, the defendant's attorney had discussed with him that the income approach would not be admissible. McQuellon then had suggested to the attorney that he could incorporate the other approaches to value. McQuellon stated that he finished his appraisal late on Tuesday, March 19, 1991. He also stated that between the first deposition and the present day, defendant's attorney had apprised him of a letter from an engineering firm in which the firm estimated there to be 4½ million tons of sand and gravel on the property. Based on this estimate and based on a conversation with a friend who owned a sand and gravel pit, he adjusted the

value of the property upward 10%. He stated that he had recently found three comparable sales on which to base his opinion of value.

On Thursday, March 21, and Friday, March 22, plaintiff's and defendant's appraisers testified, as did Merlin Gunderson. Plaintiff's first appraiser testified that the property had a fair market value of $150,000. He arrived at this figure by considering five comparable sales transactions, the cost of demolishing the buildings on the property, and the cost of remedying some channel erosion problems. Plaintiff's second appraiser testified that the property had a fair market value of $129,000. He based this opinion on six comparable sales, the sand and gravel content, and the cost of remedying the channel erosion problems.

Gunderson was allowed to testify in his capacity as owner as to the value of the property. He stated that he was a certified public accountant and had been involved in business for 20 years. He stated that he was generally familiar with area real estate. He opined that the parcel had a value of $1.25 million based on his knowledge of the premises, adjacent properties, and his knowledge of the sand and gravel on the property. He stated that he had observed a vein of sand and gravel about 60 feet deep and that he saw about 20 acres of sand and gravel on the surface. He stated over objection that he estimated the amount to be 4½ million tons.

On Friday, March 22, McQuellon testified that the fair market value of the property was $1.25 million. He based this figure on three comparable sales, personal observation of the sand and gravel, and on the letter estimate from the engineering firm that the property contained about 4½ million tons of sand and gravel. On cross-examination, McQuellon testified that he had used all three approaches in arriving at his valuation figure. Plaintiff then moved to strike his entire testimony based on the court's ruling that evidence based on cost and income approaches was inadmissible. The court did not strike the entire testimony, but did strike that portion of the testimony concerning the cost and income approaches and the figure based on them. Defendant's attorney was allowed to clarify the expert's testimony. McQuellon then testified that his opinion based on the three comparable sales, inspection of the property, and the sand and gravel was $1.04 million. On further cross-examination, McQuellon testified that he had mistakenly doubled the sales price of two of his three comparables. He also declared that this did not affect his ultimate opinion of the value of this property.

The evidence was then concluded. The jury returned a verdict finding $700,000 to be just compensation. Plaintiff appeals, raising several issues for review.

First, plaintiff contends that the trial court erred in denying its motion to exclude McQuellon's testimony *in toto* and allowing him to give an opinion as to value based on the comparable sales approach and sand and gravel content because these rulings resulted in a violation of Supreme Court Rule 220(d).

Supreme Court Rule 220 governs the testimony of expert witnesses. Section (d) specifically provides the following:

> "To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, deposition or requests to produce, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings. However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." 134 Ill. 2d R. 220(d).

The decision whether evidence in a condemnation case should be admitted rests in the discretion of the trial court, and the trial court's ruling should not be reversed unless it has clearly abused its discretion. (*City of Chicago v. Blanton* (1958), 15 Ill. 2d 198, 154 N.E.2d 242.) It is necessary to point out that the conduct of the parties placed an able trial judge in a difficult and unnecessary position by their unwillingness to abide by the clear direction of Rule 220. The abuses discussed in this opinion as they relate to expert testimony are relics of another age. Rule 220 is not advisory and it must be followed. (Accord *Wehmeier v. UNR Industries, Inc.* (1991), 213 Ill. App. 3d 6, 572 N.E.2d 320.) To allow either side to ignore the time constraints imposed by the rule and to require a judge to make rulings on discovery matters during trial on matters clearly subject to the rule defeats its purpose and encourages tactical gamesmanship.

The trial court abused its discretion in admitting McQuellon's testimony because Supreme Court Rule 220(d) barred this testimony. This court addressed the application of Rule 220(d) in *Bart v. Union Oil Co.* (1989), 185 Ill. App. 3d 64, 540 N.E.2d 770. We held that a violation of section (d) did occur in that personal injury and wrongful death case. There, plaintiff's expert, a pathologist, had testified in his deposition that he could not opine whether decedent, who had been the victim of an explosion, had felt any conscious pain and suffering before he died. The trial court allowed the expert to testify at trial that the victim may have suffered such pain. On appeal, this admission was held to have been improper as a violation of Rule 220(d).

In *Bart*, the expert vacillated on critical testimony. The violation that occurred here was more egregious than that in *Bart* because the

expert here completely changed the data underlying his appraisal several days into trial. The rules of evidence should be interpreted and applied to secure fairness in administration and to prevent unfair prejudice. As the Committee Comments point out, "[t]he purpose of the rule is to permit litigants to ascertain and rely upon the opinions of experts retained by their adversaries." (134 Ill. 2d R. 220, Committee Comments at 182.) The instant case was a condemnation proceeding, the outcome of which hinged on the testimony of the valuation witnesses. When deposed on March 8, prior to trial, McQuellon stated that he had used only the income approach to valuation. Further, he stated that he had not considered sand and gravel content in his appraisal. On March 22, at trial, McQuellon testified that he had used three comparable sales and had factored in the sand and gravel content to arrive at his appraisal. The March 21 deposition of McQuellon did not cure the prejudice to plaintiff, who had no opportunity to review and investigate McQuellon's new appraisal and prepare accordingly.

■ The second issue in this case is whether the trial court erred in denying plaintiff's motion to strike all of McQuellon's direct testimony since it was based on evidence previously excluded through plaintiff's motions *in limine*.

The court should have stricken this testimony in its entirety. A motion *in limine* is a pretrial motion which seeks an order excluding certain evidence. The advantage of a motion *in limine* is that it lets a party get an order excluding inadmissible evidence without having to object to the evidence and thereby emphasize it in front of the jury. (*Department of Public Works & Buildings v. Roehrig* (1976), 45 Ill. App. 3d 189, 359 N.E.2d 752.) Further, "[t]he making of a motion *in limine* *** is an implicit statement that the movant believes he will suffer prejudice if he has to object to the evidence before the jury." (*Roehrig,* 45 Ill. App. 3d at 197, 359 N.E.2d at 760.) The prejudice is not necessarily cured by a later admonition to the jury.

In *Department of Public Works & Buildings v. Sun Oil Co.* (1978), 66 Ill. App. 3d 64, 383 N.E.2d 634, a party to a condemnation proceeding was granted its motion *in limine* to exclude evidence of the parties' prior negotiations as to the value of the subject property. The opponent's attorney violated the ruling when he held aloft a letter (which was an offer of negotiation) and asked the property owner if he had previously put specified values on the property. The trial court ordered the testimony stricken and admonished the jury to disregard it. On appeal, the appellate court agreed that prejudice resulted from the introduction of the improper evidence which could not be cured by the admonition to the jury.

Here, McQuellon testified that the parcel was worth $1.25 million based on a combination of all three valuation approaches. The jury was admonished to disregard that figure. As in *Sun Oil*, this testimony was central to the issue to be decided by the jury. Given that the jury's function here was to find a number value for the subject property, the introduction of impermissible figures was so prejudicial that the admonition was not sufficient.

■ The third issue is whether the trial court erred in allowing Merlin Gunderson and Robert McQuellon to testify about the sand and gravel content of the property as an element of market value.

Gunderson's testimony was improperly admitted here. The general rule is that a landowner familiar with the facts which give the property value may testify to its value. (*Department of Transportation v. Harper* (1978), 64 Ill. App. 3d 732, 381 N.E.2d 843.) Thus, in *Department of Transportation ex rel. People v. Central Stone Co.* (1990), 200 Ill. App. 3d 841, 558 N.E.2d 742, the owner of a limestone quarry being taken in an eminent domain proceeding was allowed to give his opinion as to the value of his land. The appellate court upheld the admission of his testimony. It reasoned that the witness was giving lay opinion testimony in his capacity as an owner. However, in that case, the owner held a degree in mining engineering from the Massachusetts Institute of Technology.

Here, Gunderson testified that he was the owner of the property, president of defendant corporation, and a certified public accountant. He testified he believed the property was worth $1.25 million based on his knowledge of the premises, adjacent property, and the sand and gravel content. He also testified that he saw the vein of sand and gravel, that it was approximately 60 feet deep, and that there were approximately 20 acres of sand and gravel on the surface. He asserted that, as a result of computations as to depth and area, the amount of reserve was 4.5 million tons.

Defendant did not present evidence to show that Gunderson was sufficiently familiar with the facts regarding the sand and gravel content or had competence to testify about such matters. This case is distinguishable from *Stone* because there the owner, a man with a mining engineering degree, merely testified that he believed his appraiser's valuation was reasonable. Here, Gunderson, a certified public accountant, testified that based on his observations of the land, he calculated that the quantity of subsurface sand and gravel was 4.5 million tons.

McQuellon's testimony regarding sand and gravel content was also improperly admitted. McQuellon's testimony was governed by Rule 703 of the Federal Rules of Evidence dealing with expert testimony. (See

*Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322.) Rule 703 permits an expert to state the facts on which he has relied in arriving at an opinion, but those facts must be of a type reasonably relied on by experts in forming opinions on the subject in question. Here, McQuellon relied on a letter from an engineering firm that contained an estimate of the property's sand and gravel content. In his March 8 deposition, McQuellon admitted that a prudent appraiser would have requested that a separate feasibility study be performed before factoring the sand and gravel into an appraisal. The letter estimate alone thus was not the type of fact an appraiser would reasonably rely on to factor in the sand and gravel content.

■ The fourth issue is whether the trial court abused its discretion in granting defendant's motions *in limine* to exclude plaintiff's expert testimony on the channel remediation data and on the costs of demolishing the existing structures.

As to valuation, section 7–121 of the Code of Civil Procedure provides that "fair cash market value" is defined as follows:

"[T]he fair cash market value of property in a proceeding in eminent domain shall be the amount of money which a purchaser, willing but not obligated to buy the property, would pay to an owner willing but not obliged to sell in a voluntary sale, which amount of money shall be determined and ascertained as of the date of filing the complaint to condemn." Ill. Rev. Stat. 1989, ch. 110, par. 7–121.

The trial court properly excluded the channel remediation data and the demolishing costs. The market value concept excludes any special value to the owner for his particular purpose or any special value to the condemnor for its special use. (*City of Chicago v. Harrison-Halsted Building Corp.* (1957), 11 Ill. 2d 431.) The trial court determined to restrict valuation testimony to the property in an "as is" condition. It properly excluded specific and speculative costs of remedying the channel erosion problems and the specific, speculative costs of demolishing the existing structures.

For all of the foregoing reasons, we reverse the judgment of the circuit court of Tazewell County and remand the cause for a new trial.

Reversed and remanded.

BARRY, P.J., and STOUDER, J., concur.