THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellant, v. HARRY E. CRULL *et al.*, Defendants-Appellees (Commerce Bank, NA, *et al.*, Defendants).

Fourth District    No. 4—97—0430

Argued November 19, 1997.—Opinion filed January 22, 1998.

James E. Ryan, Attorney General, of Springfield (Michael J. Luke and Valerie Moehle Umholtz (argued), Assistant Attorneys General, of counsel), for appellant.

Michael T. Mahoney (argued), of Michael T. Mahoney, Ltd., of Chillicothe, for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

In April 1996, plaintiff, the Illinois Department of Transportation (Department), filed a complaint for condemnation against defendants, Harry and Marian Crull, who owned some property the Department needed for the purpose of widening Route 29 in Chillicothe, Illinois. In January 1997, the jury returned a verdict for damage to the remainder in the amount of $112,000, and the trial court entered an order reflecting that verdict. (The only issue at trial was the amount of damage to the remainder.)

The Department appeals, arguing that the trial court erred by allowing defendants' opinion witness to (1) testify at trial regarding

previously undisclosed opinions, and (2) calculate fair market values using improper methods. Because we agree with the Department's first argument, we reverse and remand for a new trial.

## I. BACKGROUND

In April 1996, the Department filed a complaint for condemnation against defendants Harry and Marian Crull (as well as some others who are not parties to this appeal) to acquire property defendants owned for the purpose of widening Route 29 in Chillicothe, Illinois.

Defendants' property is located at the intersection of Beech Street and Route 29. It is improved with an L-shaped commercial building containing three businesses owned by defendants and one business that rented space from defendants. The property had 10 parking spaces in front of the building (adjacent to Route 29) and 22 parking spaces on the side of the building. The Department sought a piece of this property approximately 10 feet wide bordering Route 29 and a triangular piece across the corner at the intersection. The taking eliminated the 10 parking spaces in front of the building.

In October 1996, the trial court entered an order vesting the Department with title to the premises. Prior to trial on the issue of final just compensation, the parties stipulated to the amount of damages for the fee simple and temporary easement acquisitions and further stipulated that damage to the remainder would occur. Accordingly, the only issue at trial was the amount of damage to the remainder.

During a pretrial deposition, Gregory Stone, defendants' opinion witness, stated that he calculated the fair market value of the property before the taking using the cost method, income method, and sales comparison method. He settled on a fair market value of $240,000, based on the income method. He also stated that he would testify that the damage to the remainder totaled $125,011.64 as of June 24, 1996, based on the cost-to-cure method. The cost to cure was the cost of tearing down a portion of defendants' building along Route 29 (to provide parking spaces) and constructing an addition with the same square footage at the rear of the building.

James Klopfenstein, a professional appraiser and the Department's opinion witness, testified that the fair market value of the whole property before the taking was $216,000, based on sales of comparable properties. (The parties stipulated that the value of the fee simple acquisition was $10,000.) The taking damaged the property by eliminating parking spaces and moving the road closer to the building. Klopfenstein appraised the property's fair market value af-

ter the taking at $171,000, based on his judgment, knowledge, and 30 years' experience with the real estate market. Thus, the damage to the remainder as a result of the fee simple taking—the difference in value between the property before and after the taking—was $35,000. Klopfenstein also testified that the damage as a result of the easement totaled $8,800, resulting in a total damage amount of $43,800. These appraisals were based on values as of the date of filing, April 25, 1996.

At trial, Stone repeated his deposition testimony that the damage to the remainder totaled $125,011.64, based on the cost-to-cure method. He also opined that the value of the property before the taking was $240,000, and the value after the taking was $50,000; therefore, the difference—the damage to the remainder—was $190,000, as of April 25, 1996. Taking into account the value of the fee simple and easement acquisition, Stone arrived at a total damage figure of $179,000.

At trial, the Department objected to Stone's use of the cost-to-cure method to calculate values. The trial court agreed that the cost-to-cure method was improper, struck the testimony, and instructed the jury to disregard that portion of Stone's opinion that valued the damage to the remainder at $125,011.64, based on the cost to cure.

The Department objected to Stone's remaining testimony on the basis that it had not been disclosed prior to trial; thus, it violated Supreme Court Rule 213 (166 Ill. 2d R. 213). The Department's counsel stated:

> "Nowhere in [Stone's deposition or report] is there an opinion disclosed to me as to what his opinion is of the fair market value of the remainder after the taking as affected by the taking."

However, the trial court overruled the Department's objection and allowed Stone's remaining testimony to stand, stating that it was in the best interest of justice to allow the testimony. The court also stated that "the rest of [Stone's] testimony will be something the jury may consider, *including the portions that were not disclosed before today.*"

In January 1997, the jury entered a verdict for damage to the remainder in the amount of $112,000, and the trial court subsequently entered a judgment on that verdict.

## II. THE RULE 213 VIOLATION

The Department first argues that the trial court erred by permitting defendants to present previously undisclosed opinions to the jury in violation of Supreme Court Rule 213 (166 Ill. 2d R. 213). The Department specifically contends that the court should have excluded Stone's trial testimony to the extent it had not been previously

disclosed or was inconsistent with Stone's discovery disclosures. In response, defendants contend that Stone presented no new opinions at trial; rather, (1) he was merely explaining the basis for his opinions that the damage to the remainder equalled $125,011.64; and (2) the Department's counsel never asked Stone to explain the basis for his opinion during his deposition. We agree with the Department.

The record showed that Stone—in both his deposition and written report—appraised the property before the taking at $240,000, a figure derived from the income method. He opined that the damage totalled $125,011.64 and he described in detail how he calculated that figure using the cost-to-cure method. His report and deposition both stated that the taking caused "functional obsolescence" because all the parking would have to be at the back of the property.

Regarding the fair market value of the whole property before the taking, Stone testified at trial that (1) the fair market value of the whole property before the taking was $240,000; (2) he had relied primarily on the comparable sales (or market data) method to determine that amount; and (3) the income method "was supportive of that value."

Stone also testified at trial that several methods may be used to determine damage to the remainder, as follows:

"[Y]ou can assume that there could have been a total taking, that the property was so damaged that it couldn't be used again, and thus you would have to take the building off and you would be left with the land. And from that land value, you would subtract the cost of demolition, which would indicate that the property's worth about $40,000. So your damages are approximately $200,000.

Then you can look at it from a change of use [but] [t]hat's kind of speculative ***.

*** The cost to [change the use] *** would be substantial, exceeding probably $150-160,000 ***.

The third possibility was *** to remove the Lester's Donut building and move it around and rebuild it on the back ***. And that rehabilitation or reconstruction was the sum of the cost of demolition, the cost to put in the new front and to rebuild the small Lester's Donuts on the other end of the property."

He testified that the fair market value of the remainder without any proposed reconstruction would be $50,000; thus, the damage to the remainder would be $190,000. He then stated that he selected the figure for damage to the remainder derived from the cost-to-cure method because that method resulted in the lowest amount—namely, $125,011.64.

After Stone testified at trial, the Department objected to Stone's use of the cost-to-cure method to calculate values in an eminent

domain case, contending that while an appraiser may *consider* the cost to cure, he or she must determine the value before and after the taking and may not present evidence to the jury on the cost to cure. See *Department of Transportation v. Quincy Coach House, Inc.*, 64 Ill. 2d 350, 356 N.E.2d 13 (1976); *City of Freeport v. Fullerton Lumber Co.*, 98 Ill. App. 3d 218, 423 N.E.2d 924 (1981). The trial court sustained the Department's objection, struck the testimony, and instructed the jury to disregard that part of Stone's opinion valuing the damage to the remainder at $125,011.64. (We note that defendants do not challenge the court's ruling on the propriety of using the cost-to-cure method.) Nevertheless, the court expressly admitted portions of Stone's testimony that it acknowledged had not been previously disclosed—specifically his estimate that the fair market value after the taking without considering reconstruction was $50,000.

■ Supreme Court Rule 213 requires that, upon written interrogatory, a party *must disclose* the subject matter, conclusions, opinions, qualifications and all reports of a witness who will offer any opinion testimony. *Iser v. Copley Memorial Hospital*, 288 Ill. App. 3d 408, 411, 680 N.E.2d 747, 749 (1997). Subsections (g) and (i) provide as follows:

"(g) **Opinion Witness.** An opinion witness is a person who will offer any opinion testimony. Upon written interrogatory, the party *must state*:

(i) the subject matter on which the opinion witness is expected to testify;

(ii) the *conclusions and opinions of the opinion witness and the bases therefor*; and

(iii) the qualifications of the opinion witness;

and provide all reports of the opinion witness.
*** 

(i) **Duty to Supplement.** A party has a duty to seasonably supplement or amend any prior answer or response whenever new or additional information subsequently becomes known to that party." (Emphasis added.) 166 Ill. 2d Rs. 213(g), (i).

The express language of Rule 213 plainly provides that each party is *required* to disclose an opinion witness' proposed testimony, including conclusions *and* the bases of those conclusions. Further, subsection (i) of Rule 213 gives each party a continuing duty to inform the opponent of new or additional information whenever such information becomes known to the party. The committee comments to subsection (g) of Supreme Court Rule 213 further emphasize these points, stating as follows:

"It is the Committee's belief that in order to avoid surprise, the subject matter of all opinions *must be disclosed* pursuant to this rule and Supreme Court Rule 218, and that *no new or additional*

*opinions will be allowed* unless the interests of justice require otherwise. \*\*\* Further, upon written interrogatories, a party *must* state the subject matter to be testified to, the conclusions, opinions[,] and qualifications of opinion witnesses, and provide all reports of opinion witnesses." (Emphasis added.) 166 Ill. 2d R. 213(g), Committee Comments, at lxxviii.

In reviewing a criminal case involving counsel's failure to comply with one of the supreme court rules governing criminal procedure, the supreme court stated that those rules "are in fact rules of procedure and not suggestions" and it is incumbent upon counsel and courts alike to follow them. *People v. Wilk*, 124 Ill. 2d 93, 103, 529 N.E.2d 218, 221 (1988) (construing Rule 604(d) (107 Ill. 2d R. 604(d))).

■ The supreme court rules on discovery are also *mandatory* rules of procedure that courts and counsel must follow. See *Chicago & Illinois Midland Ry. Co. v. Crystal Lake Industrial Park, Inc.*, 225 Ill. App. 3d 653, 658, 588 N.E.2d 337, 341 (1992); *Wilkerson v. Pittsburgh Corning Corp.*, 276 Ill. App. 3d 1023, 1034-35, 659 N.E.2d 979, 987 (1995). Discovery rules permit litigants to ascertain and rely upon the opinions of experts retained by their adversaries. *Crystal Lake*, 225 Ill. App. 3d at 658, 588 N.E.2d at 341. The supreme court rules represent the court's best efforts to manage the complex and important process of discovery. The committee comments to Rule 213 plainly state that one of the purposes of Rule 213 is to avoid surprise. 166 Ill. 2d R. 213(g), Committee Comments. To allow either side to ignore Rule 213's plain language defeats its purpose and encourages tactical gamesmanship. See *Crystal Lake*, 225 Ill. App. 3d at 658, 588 N.E.2d at 341 (the trial court's admission of an expert witness' testimony that was inconsistent with his deposition testimony (under Rule 220, which formerly governed expert witnesses (134 Ill. 2d R. 220(d))) constituted an "egregious violation" of discovery rules).

■ Decisions regarding admission of evidence in a condemnation case lie within the trial court's discretion and will not be reversed absent an abuse of that discretion. *Crystal Lake*, 225 Ill. App. 3d at 658, 588 N.E.2d at 341. In this case, the trial court abused its discretion by allowing Stone to testify regarding his previously undisclosed opinions, including the fair market value of the remainder without reconstruction. The court knew that Stone had not previously disclosed this testimony and apparently recognized that Rule 213 barred it because the court stated that "the interests of justice" required admitting that testimony. We disagree. This is precisely the situation that the rule was intended to address, and no extenuating circumstances exist here that justify an exception to the rule.

Further, in response to defendants' contention that Stone only

sought to explain the basis of his conclusions and was not providing new or additional information in violation of Rule 213, we note that Rule 213 expressly requires a party to disclose all opinions and "*the bases therefor.*" (Emphasis added.) 166 Ill. 2d R. 213(g)(ii).

In so holding, we reject the trial court's implication that the Department's counsel acted in bad faith by not moving to strike this evidence prior to trial. In permitting Stone to testify regarding his undisclosed opinions on the fair market value of the property, the trial court stated as follows:

> "The discovery rules are an attempt to avoid surprises in the courtroom and to avoid what we might commonly call sandbagging the opposition.
>
> From your argument, [counsel], it's clear that you intended to isolate this opinion, or this witness's opinions, so that at this point in the trial you could make the motion to strike all of his testimony.
>
> I think what you should have done is file a motion prior to trial to bar him as a witness because of the fact that his opinions are not legally proper."

The Department's counsel admitted that she knew before trial that the cost-to-cure method was generally inadmissible as a basis for determining fair market value of a condemned property. At trial, she stated as follows:

> "The only reason I haven't moved to strike [the cost-to-cure method] at this point was because I felt that technically [defendants' counsel] had the opportunity to tie things together. And when he did try to tie them together, it was in an improper fashion because he attempted to introduce an opinion that wasn't previously disclosed."

We decline to impose upon counsel any legal, moral, or professional obligation of any kind to inform her opponent of weaknesses in the opponent's case, witnesses, or proposed evidence. Neither Illinois law nor professional ethics require an attorney to advise his or her opponent of such deficiencies or how best to present his or her case.

The Department argues that this court should strike Stone's previously undisclosed testimony on the value of damage to the remainder and remand with directions that the trial court enter judgment consistent with the only evidence remaining before the jury—the testimony of the Department's opinion witness, James Klopfenstein. In response, defendants assert that if we conclude that the court erred, then we should remand for a new trial.

Normally, we would grant the Department's request and reject defendants' response. However, we choose not to do so in this case—in part because it appears to us that Rule 213 establishes more exacting

standards regarding disclosure than did Supreme Court Rule 220 (134 Ill. 2d R. 220), repealed by order of June 1, 1995, which formerly governed expert witnesses. Trial courts should be more reluctant under Rule 213 than they were under former Rule 220 (1) to permit the parties to deviate from the strict disclosure requirements, or (2) not to impose severe sanctions when such deviations occur. Indeed, we believe one of the reasons for new Rule 213 was the need to require stricter adherence to disclosure requirements. Nevertheless, because this case constitutes one of the first to construe new Rule 213 and to point out this higher standard of compliance, we decline the Department's request to remand with directions to enter judgment. Instead, we reverse the trial court and remand for a new trial.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for a new trial.

Reversed and remanded for a new trial.

GARMAN, P.J., and KNECHT, J., concur.