SHIRLEY SPAIN, Indiv. and as Ex'x of the Estate of Marshal L. Spain, Jr., Deceased, Plaintiffs-Appellees, v. OWENS CORNING FIBERGLASS CORPORATION, Defendant-Appellant (Celotex Corporation *et al.*, Defendants).

Fourth District  No. 4—98—0067

Argued November 17, 1998.—Opinion filed April 29, 1999.

Bruce R. Braun (argued) and John F. Stinneford, both of Winston & Strawn, of Chicago, for appellant.

James Walker (argued), of Walker & Wylder, Ltd., of Bloomington, for appellee.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Shirley Spain, as administrator of the estate of her husband, Marshal L. Spain (decedent), sued numerous manufacturers of asbestos-containing products, including Owens Corning Fiberglass Corporation (OC). Her complaint alleged the manufacturers were responsible for decedent's injuries and later death. Before trial, all defendants but OC settled or were dismissed. A jury returned a verdict against OC, awarding plaintiff $1.8 million.

OC appeals, arguing (1) the evidence establishing proximate cause was insufficient as a matter of law; (2) the trial court erred when it prohibited OC from introducing evidence of decedent's exposure to other manufacturers' asbestos; (3) plaintiff opened the door to admission of decedent's exposure to other manufacturers' asbestos; (4) the court abused its discretion when it refused OC's proximate cause instruction; and (5) the court erred when it refused to grant a new trial or a remittitur. We affirm.

## I. BACKGROUND

Decedent died in June 1988 of complications from mesothelioma, an asbestos-related lung disease. Before trial, OC moved *in limine* requesting it be allowed to present evidence of decedent's other exposures to asbestos products not manufactured by OC. OC alleged

this evidence supported its defense a third party was the sole proximate cause of decedent's injury and death. The court denied the motion.

At the September 1997 trial, a portion of decedent's video-recorded deposition was played for the jury. He stated he began working at A.E. Staley grain processing plant in Decatur, Illinois, in January 1957. After six months, he was assigned to building number nine, the feed house, where he operated and maintained the grain dryers.

Decedent stated the feed house was six stories tall with miles of piping running through it, a third of which was insulated, and he worked near or directly with other machinists working on the pipes. When the machinists worked on the pipes, they would strip off and replace the old insulation. Frequently, decedent was standing within two to three feet of them during this process and he would get dusty. Decedent also stated the machinists used round pipe and sheet insulation, both of which created dust when cut.

Decedent indicated the work was part of his regular routine during the 1960s and 1970s. During this time, he saw OC's insulation boxes in the feed house. Before retiring in 1986, he began having trouble breathing. Shortly thereafter, an operation revealed tumors along decedent's lungs.

OC sought to admit decedent's testimony concerning his other exposures to asbestos, including his experiences working as a pipefitter's helper for Wabash Railroad and removing old asbestos-containing firebrick from Staley's grain dryers without a mask or respirator. The court refused to admit this evidence pursuant to *Lipke v. Celotex Corp.*, 153 Ill. App. 3d 498, 509, 505 N.E.2d 1213, 1221 (1987).

Dr. Michael Zia, decedent's pulmonologist, diagnosed him with mesothelioma. Dr. Zia testified mesothelioma can be attributed to a single exposure to asbestos and occurs when an asbestos fiber penetrates the lung and reaches the pleura. However, due to the lung's ability to remove foreign particles, mesothelioma is likely to result from an intense exposure, starting in one spot and spreading. Dr. Zia stated the more asbestos a person is exposed to the greater the risk of developing mesothelioma. OC sought to admit Dr. Zia's testimony concerning decedent's asbestos exposure at Wabash. The court refused OC's request. See *Lipke*, 153 Ill. App. 3d at 509, 505 N.E.2d at 1221.

Dr. Gerald Kerby, the defendant's expert pulmonologist, provided a similar summary of mesothelioma's cause. Dr. Kerby also stated mesothelioma has a latency period of 20 to 40 years. OC sought to admit Dr. Kerby's opinion concerning decedent's asbestos exposure at Wabash. The court again refused. See *Lipke*, 153 Ill. App. 3d at 509, 505 N.E.2d at 1221.

Dr. Joel Bender, OC's vice-president of health sciences and chief medical officer, testified (1) particles of asbestos can be invisible to the naked eye, (2) mesothelioma is rare among persons not exposed to asbestos, (3) the maximum distance asbestos fibers can travel through the air and the level of asbestos exposure at which mesothelioma will not occur are not known, (4) asbestos fibers can be carried by exposed workers throughout a work site, and (5) all of a person's exposure to asbestos can be implicated as the cause of an asbestos disease.

Dr. Jon Konzen, medical director at OC from 1968 to the early 1990s, stated OC knew asbestos dust was hazardous to humans since the 1940s. However, OC did not warn the public until 1976 or 1977, after it stopped adding asbestos to its insulation products. Other testimony revealed during the 1950s, 1960s, and 1970s, OC manufactured Kaylo pipe insulation (Kaylo), which contained 12% to 22% asbestos. Also, cutting Kaylo released asbestos dust into the air.

Ellis Carlton testified he worked for Sprinkmann Insulation, an authorized distributor of OC's products, from 1958 to 1994. Carlton stated Sprinkmann sold more OC insulation during the 1960s and 1970s than any other brand. Sprinkmann sold OC's insulation to Staley's during this time.

Wesley Klein, a truck driver for Sprinkmann, stated he made at least 20 trips to Staley's during the 1960s and 40 to 50 trips during the 1970s. Klein hauled Kaylo and block insulation. The insulation was either immediately applied by Sprinkmann's pipefitters or Staley's employees, or it was stored at Staley's. Klein hauled more Kaylo than any other pipe insulation. Russell Wolstenholme, another driver for Sprinkmann, stated he delivered insulation, including Kaylo, to Staley's and made more than 50 trips from 1954 to 1964.

Ray Virden, who worked for Staley's from 1955 to 1995, stated he and decedent worked together in the feed house. The feed house was four stories tall, 200 feet or more wide, and full of steam lines. The doors and windows of the feed house were frequently left open, and dust was visible in the air. The feed house's interior was wide open, except for a few machines and grain dryers. Virden indicated the steam pipes were covered with insulation and he witnessed insulation being removed, replaced, or repaired on several occasions.

Ellis Long, an insulator for Sprinkmann during the 1960s and 1970s, testified he installed more Kaylo at Staley's than any other product. He stated working with Kaylo created dust, which was visible on his hair and clothing. Further, Long specifically recalled one incident when he installed Kaylo in the feed house. On cross-examination, Long stated he did not recall removing insulation at Staley's and he assumed he used Kaylo in the feed house because it was the product Sprinkmann preferred.

At the close of plaintiff's case and at the end of the trial, OC moved for directed verdict, arguing plaintiff failed to prove causation. The court denied both motions. The jury returned a verdict for plaintiff, awarding her $1.8 million in damages on which the court entered judgment. OC filed a timely posttrial motion for judgment *n.o.v.* or for a new trial, which the court denied. This appeal followed.

## II. ANALYSIS

### A. Proximate Cause

OC asks this court to reverse the trial court's denial of its motion for directed verdict or judgment *n.o.v.* OC alleges the evidence failed to prove its product was the proximate cause of decedent's injury, so the issue should not have been presented to the jury. See *Thacker v. UNR Industries, Inc.,* 151 Ill. 2d 343, 359-60, 603 N.E.2d 449, 457 (1992). OC contends the evidence failed to link Kaylo to defendant's workplace. See *Johnson v. Owens-Corning Fiberglass Corp.,* 284 Ill. App. 3d 669, 676-77, 672 N.E.2d 885, 890 (1996).

■ A motion for directed verdict or judgment *n.o.v.* will be granted only if all the evidence so overwhelmingly favors the movant no contrary verdict could stand. On review of the trial court's judgment denying the motion, the evidence is examined in the light most favorable to the party opposing the motion. See *Thacker,* 151 Ill. 2d at 353-54, 603 N.E.2d at 454.

■ Plaintiff bore the burden to produce evidence establishing OC's product was the cause of decedent's injuries. Causation evidence may be direct or circumstantial; however, the latter must not be based on mere speculation or conjecture. See *Johnson,* 284 Ill. App. 3d at 673, 672 N.E.2d at 888. To prove proximate cause in asbestos cases, the evidence must show the decedent (1) worked in an area where OC's asbestos-containing products were frequently used and (2) the decedent worked sufficiently close to this area so as to come into contact with OC's products. *Thacker,* 151 Ill. 2d at 359, 603 N.E.2d at 457.

In *Johnson,* decedent, who died from lung cancer, worked for Keystone Steel and Wire Company for over 35 years. After his death, his wife sued numerous defendants who supplied Keystone with asbestos-containing products. On appeal, the court reviewed the trial court's decision granting summary judgment to some of the defendants. In affirming summary judgment for Zoltek Corporation, the appellate court found no evidence indicating where Zoltek's products were used. Thus, plaintiff was unable to establish even a minimum level of contact with Zoltek's asbestos. *Johnson,* 284 Ill. App. 3d at 677, 672 N.E.2d at 891.

In reversing summary judgment for A.P. Green Industries, Inc., the court relied on evidence establishing A.P. Green's asbestos was used regularly in the mill where decedent worked, and when used, clouds of dust would rise exposing employees to the asbestos. The court found decedent's exposure to the asbestos dust created a triable issue of fact. See *Johnson*, 284 Ill. App. 3d at 678, 672 N.E.2d at 891.

In affirming summary judgment for A&M Insulation Company, the court reviewed records showing A&M sold asbestos products to Keystone. However, the court failed to find evidence supporting the inference the products were used in a manner exposing decedent to asbestos. Without this evidence, plaintiff's claim could not succeed. See *Johnson*, 284 Ill. App. 3d at 679, 672 N.E.2d at 892.

■ Here, the evidence established (1) decedent worked in the feed house for over 28 years; (2) machinists removed and installed pipe insulation, including Kaylo, near decedent's workplace; (3) Kaylo contained 12% to 22% asbestos; (4) when cut, Kaylo created asbestos dust, which was visible in the air; and (5) mesothelioma is rare among people not exposed to asbestos. Thus, the jury could reasonably conclude Kaylo's asbestos dust caused decedent's mesothelioma.

OC contends decedent's testimony he saw boxes of material around his work area bearing OC's name was insufficient to satisfy the proximity requirement under *Thacker* because decedent did not know whether the boxes contained Kaylo or fiberglass insulation. OC also asserts Long's testimony was insufficient to satisfy the proximity requirement because Long was not absolutely sure he installed Kaylo in the feed house.

While Long's uncertainty affects his credibility as a witness, credibility is for the trier of fact to weigh, and its decision will not be disturbed on review unless manifestly erroneous. See *Gaines v. Townsend*, 244 Ill. App. 3d 569, 575, 613 N.E.2d 796, 801 (1993). Here, Long specifically recalled installing insulation, which he believed was Kaylo, in the feed house. His statements were corroborated by evidence establishing Kaylo was delivered to Staley's, steam pipes in the feed house were covered with insulation, and pipe insulation was removed and replaced in the feed house on a regular basis. The jury could reasonably believe Long installed Kaylo in the feed house.

■ Moreover, Long's testimony is not the only evidence linking Kaylo to decedent's work area. This court has previously concluded reliable expert evidence of fiber drift may be used to establish the proximity prong of the *Thacker* test. Fiber drift evidence will support an inference of causation if it is accompanied by evidence establishing how frequently the asbestos product was used, the area in which it was used, and the regularity of decedent's employment within a zone

covered by the reach of the fiber drift. See *Wehmeier v. UNR Industries, Inc.*, 213 Ill. App. 3d 6, 31, 572 N.E.2d 320, 337 (1991).

In *Wehmeier*, this court stated the relevance of the fiber drift theory to causation depends upon many factors, including the type of asbestos disease and the description of the actual workplace. This court found "[w]here there is competent evidence that one or a *de minimus* [sic] number of asbestos fibers can cause injury, a jury may conclude the fibers were a substantial factor in causing a plaintiff's injury." *Wehmeier*, 213 Ill. App. 3d at 31, 572 N.E.2d at 337.

The Supreme Court of Illinois later adopted the fiber drift theory, holding it is applicable only if the plaintiff can show the defendant's asbestos was "actually inhaled by the decedent." *Thacker*, 151 Ill. 2d at 364, 603 N.E.2d at 459. In *Thacker*, the evidence showed defendant's asbestos contributed to the dust in the air where defendant worked. The supreme court held this evidence was sufficient to satisfy the proximity test based on the potent nature of asbestos and the fact working with asbestos generated dust. *Thacker*, 151 Ill. 2d at 364-65, 603 N.E.2d at 459.

■ Here, expert testimony established (1) asbestos particles are invisible to the naked eye; (2) asbestos dust drifts through the air; and (3) mesothelioma can be contracted from a single exposure to asbestos fibers. Other nonexpert testimony revealed (1) the feed house was an open environment with few interior walls; (2) machinists regularly replaced and installed new pipe insulation, including Kaylo, in the feed house; (3) Kaylo produced dust when cut; and (4) dust was visible in the feed house. Based on the fact decedent worked in the feed house for 28 years, this evidence supports the fiber drift theory, thereby satisfying the proximity requirement.

### B. Sole Proximate Cause Defense

OC objects to the trial court's refusal to admit evidence on decedent's other exposures to asbestos. Specifically, OC contends the court prejudiced it by prohibiting evidence supporting the defense a third party was the sole proximate cause of decedent's injury. See *Leonardi v. Loyola University*, 168 Ill. 2d 83, 93-94, 658 N.E.2d 450, 455 (1995).

Normally, a trial court's decision to exclude or admit evidence is reviewed for an abuse of discretion. *Baird v. Adeli*, 214 Ill. App. 3d 47, 68, 573 N.E.2d 279, 292 (1991). Here, however, the court excluded the proposed evidence based solely on its reading of *Lipke*, 153 Ill. App. 3d at 509, 505 N.E.2d at 1221. As the parties do not dispute the facts, we review this issue *de novo*. See *Farmers State Bank v. Neese*, 281 Ill. App. 3d 98, 101, 665 N.E.2d 534, 536 (1996).

In *Lipke*, the appellate court held a party " 'guilty of negligence cannot avoid responsibility merely because another person is guilty of negligence contributing to the same injury.' " *Lipke*, 153 Ill. App. 3d at 509, 505 N.E.2d at 1221, quoting *Sears v. Kois Brothers Equipment, Inc.*, 110 Ill. App. 3d 884, 889, 443 N.E.2d 214, 219 (1982). Thus, the fact decedent was exposed to a number of different asbestos products did not relieve the defendant of liability for the injury. Accordingly, the court prohibited evidence of the decedent's other exposures to asbestos. *Lipke*, 153 Ill. App. 3d at 509, 505 N.E.2d at 1221.

In *Leonardi*, plaintiffs, administrators of decedent's estate, brought a medical malpractice action against numerous defendants. The complaint sought damages for negligence resulting from a Cesarean section. Before the trial began, decedent's attending physician, a defendant, died and his estate settled. Plaintiffs later moved *in limine* to bar evidence of the alleged negligence of any person other than the named defendants. The court denied the motion and allowed the defendants to question witnesses regarding the attending physician's standard of care. *Leonardi*, 168 Ill. 2d at 90-92, 658 N.E.2d at 454-55.

On appeal, plaintiffs argued the court erred by denying their motion *in limine* based on the common law principle there can be more than one proximate cause of the injury, and a person is liable for his or her negligent conduct whether it contributed wholly or partly to the plaintiff's injury *as long as it was one of the proximate causes of the injury*. "Thus, evidence of another person's liability is irrelevant ***." *Leonardi*, 168 Ill. 2d at 93, 658 N.E.2d at 455, citing *Kochan v. Owens-Corning Fiberglass Corp.*, 242 Ill. App. 3d 781, 788-89, 610 N.E.2d 683, 688 (1993).

The supreme court found the *Lipke* ruling inapplicable, stating the *Lipke* court's rationale presumed the defendant's conduct was at least a proximate cause of the injury. In *Leonardi*, the defendants' answer denied they were even partly a proximate cause of the decedent's injury; instead, their defense theory was decedent's attending physician was the sole proximate cause of the injury. Based on this defense, defendants could introduce evidence a third party was the sole proximate cause of the injury. *Leonardi*, 168 Ill. 2d at 94, 658 N.E.2d at 455.

The *Leonardi* court found the *Lipke* standard inapplicable to medical malpractice cases, but did not change the law governing asbestos cases. Because asbestos-related diseases cannot be linked to one fiber or a particular defendant, Illinois courts have long recognized the difficulty in determining whether a specific asbestos exposure caused or contributed to a person's asbestos-induced injury or death. Thus, to

assist plaintiffs in proving proximate cause, the supreme court adopted the "frequency, regularity and proximity," or *"de minimis,"* test in *Thacker.* See *Kochan,* 242 Ill. App. 3d at 790, 610 N.E.2d at 688-89.

■ Once plaintiff satisfied the *Thacker* test, OC is presumed to be a proximate cause of decedent's asbestos injury. See *Thacker,* 151 Ill. 2d at 360, 603 N.E.2d at 457; *Johnson,* 284 Ill. App. 3d at 676, 672 N.E.2d at 890. Illinois law then requires the trier of fact to independently evaluate whether Kaylo was a substantial factor in causing decedent's injury, thereby making evidence of other asbestos exposures irrelevant. See *Tragarz v. Keene Corp.,* 980 F.2d 411, 425 (7th Cir. 1992). OC can rebut the presumption by proving (1) decedent was not exposed to its product, (2) his exposure was insufficient to cause injury, or (3) its product contained too low an amount of asbestos to be hazardous. See *Kochan,* 242 Ill. App. 3d at 790, 610 N.E.2d at 689.

■ Allowing OC to admit evidence of decedent's other asbestos exposures would confuse the jury. However, OC may introduce such evidence if it files contribution actions against the other manufacturers allegedly responsible for the injury. This evidence is then limited to exposures from those other manufacturers named in the contribution actions. Only then can the jury independently evaluate whether each manufacturer's product was a substantial factor in causing decedent's injury. Here, by not filing contribution actions against the other manufacturers of asbestos-containing products, OC was barred from admitting any evidence concerning decedent's other exposures.

## C. Waiver of *Lipke* Rule

OC asserts plaintiff waived the court's *Lipke* ruling when her attorney made repeated references to decedent's cumulative exposure to asbestos. OC contends plaintiff's counsel's opening statement and cross-examination of Dr. Kerby alluded to all of decedent's asbestos exposures, thereby confusing causation with risk analysis. OC asserts it could introduce evidence of other asbestos exposures because plaintiff "opened the door." See *Kochan,* 242 Ill. App. 3d at 790, 610 N.E.2d at 689.

The *Kochan* court noted a plaintiff incurs a risk by not introducing evidence of other exposures because, if the evidence shows only a minimal exposure to defendant's product, plaintiff's expert may appear foolish testifying such a minimal exposure caused the disease. However, when the plaintiff attempts to bolster the expert's opinion with evidence of other exposures, he or she opens "the door to defendant's *argument* that it was plaintiff's exposure to other products that caused plaintiff's injury." (Emphasis added.) *Kochan,* 242 Ill. App. 3d at 790, 610 N.E.2d at 689.

First, we note the *Kochan* court's statements are *dicta*. Second, these *dicta* do not permit OC to introduce evidence of decedent's other exposures; rather, they allow OC to *argue* its product was not responsible. As *Kochan* stated, the question for the jury remains consistent throughout the trial, *i.e.*, whether the evidence was sufficient to prove a particular defendant's asbestos-containing product caused the injury. *Kochan*, 242 Ill. App. 3d at 790, 610 N.E.2d at 689. Any argument based on the effects of third-party asbestos is irrelevant and intended to confuse the jury.

### D. OC's Jury Instruction

The court refused to give the following proximate cause instruction offered by OC:

> "When I use the expression proximate cause, I mean a cause which in natural and probable sequence produced the injury complained of. *For a particular product to be a proximate cause of decedent's injury or death, there must be evidence of exposure to that particular product on a regular basis, over an extended period of time, in proximity to where the decedent actually worked.* It need not be the only cause nor the least or nearest cause. It is sufficient if it concurs with some other cause acting at the same time which, in combination with it, cause the injury." (Emphasis added.)

OC contends most of the instruction follows Illinois Pattern Jury Instructions, Civil, No. 15.01 (3d ed. 1995), while the rest complies with the proximate cause standard set forth in *Thacker* (see 151 Ill. 2d at 358-59, 603 N.E.2d at 456-57). OC asserts the court abused its discretion by refusing the instruction. See *NWI International, Inc. v. Edgewood Bank*, 291 Ill. App. 3d 247, 258, 684 N.E.2d 401, 408 (1997).

■ Parties are entitled to have the jury instructed on their theories and the issues presented. Whether to give an instruction is within the discretion of the trial court. *Wilkerson v. Pittsburgh Corning Corp.*, 276 Ill. App. 3d 1023, 1031, 659 N.E.2d 979, 985 (1995). In *Wilkerson*, this court rejected the same argument by a defendant who offered a similar instruction. The instruction lifted language from this court's opinion in *Wehmeier*, 213 Ill. App. 3d at 28, 572 N.E.2d at 335. See *Wilkerson*, 276 Ill. App. 3d at 1033, 659 N.E.2d at 986. The *Wilkerson* court concluded "the 'practice of lifting sentences from court opinions and converting them into instructions *** is not a good one, as it often leads to serious error.' " *Wilkerson*, 276 Ill. App. 3d at 1033-34, 659 N.E.2d at 986, quoting *Kingston v. Turner*, 115 Ill. 2d 445, 460, 505 N.E.2d 320, 326 (1987).

OC asserts its instruction was necessary because plaintiff's trial strategy attacked the validity of the "frequency, regularity and proximity" standard. However, inclusion of the *Thacker* test, without explana-

tion of the terms "frequently," "proximity," and "regularity," does not clarify proximate cause, but could lead to further confusion. Moreover, OC was not precluded from *arguing* exposure to its asbestos was not sufficiently frequent, regular, or proximate to cause decedent's injury. The court did not abuse its discretion in rejecting OC's instruction.

### E. Denial of New Trial or Remittitur

OC asserts the jury's verdict was based on passion and prejudice and not properly supported by evidence. OC argues the court was required to set aside the verdict and order a new trial or a remittitur. See *Haid v. Tingle*, 219 Ill. App. 3d 406, 411, 579 N.E.2d 913, 916-17 (1991). Specifically, OC contends the court erred by (1) prohibiting OC from questioning Dr. Zia about the decedent's reduced life expectancy due to smoking, hypertension, and heart disease, and (2) admitting letters and cards written by decedent to plaintiff.

### 1. *Dr. Zia's Testimony*

Prior to Dr. Zia testifying, plaintiff stated decedent smoked a pack and a half of cigarettes per day. Plaintiff introduced life tables showing an average 60-year-old white male would be expected to live another 18 years. Thereafter, Dr. Zia testified nonsmokers outlive smokers on average, but he did not know the life expectancy of a 60-year-old white male who smoked.

During cross-examination, OC questioned Dr. Zia about decedent's health problems and their effects on his life expectancy. Plaintiff successfully objected to these questions as beyond the scope of direct examination. OC then subpoenaed Dr. Zia to appear as a defense witness. Again, plaintiff successfully objected to the testimony on the basis it constituted an undisclosed expert opinion. See 166 Ill. 2d R. 213(g); *Department of Transportation v. Crull*, 294 Ill. App. 3d 531, 537, 690 N.E.2d 143, 147 (1998). OC contends Dr. Zia could be questioned about decedent's medical conditions and his life expectancy without being disclosed under the treating physician exception.

In *Boatmen's National Bank v. Martin*, 155 Ill. 2d 305, 323, 614 N.E.2d 1194, 1203 (1993), the supreme court held treating physicians are not subject to disclosure "[b]ecause [based on] a treating physician's relationship to the case, no surprise could be reasonably generated by his expert opinion testimony." The court looked to Rule 220(b)(1), which states "the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party" (134 Ill. 2d R. 220(b)(1)), and held the parties should assume the treating physician would form an opinion based on his involvement in the underlying facts. *Boatmen's*, 155 Ill. 2d at 323, 614 N.E.2d at 1203.

Prior to its decision in *Boatmen's*, the supreme court stated treating physicians are not typically retained to render an opinion at trial but are consulted whether or not litigation is pending or contemplated. Hence, treating physicians are not subject to Rule 220's disclosure requirements. See *Tzystuck v. Chicago Transit Authority*, 124 Ill. 2d 226, 234-37, 529 N.E.2d 525, 528-29 (1988).

However, the supreme court repealed Rule 220 (see Official Reports Advance Sheet No. 20 (September 27, 1995), R. 220 (eff. January 1, 1996)) and amended Rule 213 to include discovery and disclosure of opinion witnesses, omitting the phrase it previously interpreted to create the treating physician exception (see 166 Ill. 2d R. 213; *Tzystuck*, 124 Ill. 2d at 234, 529 N.E.2d at 528). Subsection (g) of Rule 213 requires OC to disclose the subject matter, conclusions, opinions, qualifications, and all reports of a witness who will offer *any* opinion testimony. See *Crull*, 294 Ill. App. 3d at 536, 690 N.E.2d at 146. By eliminating the phrase "retained to render an opinion at trial," we conclude the supreme court intended to eliminate the "retained" versus "nonretained" distinction (see *Boatmen's*, 155 Ill. 2d at 325, 614 N.E.2d at 1204) from the discovery requirements. Rule 213 is intended to avoid surprise by requiring the subject matter of *all opinions be disclosed* and prohibiting any new or additional opinions unless the interests of justice require otherwise. See 166 Ill. 2d R. 213(g), Committee Comments, at lxxviii. Thus, the treating physician exception no longer exists.

■ The rules on discovery are mandatory rules of procedure. See *Crull*, 294 Ill. App. 3d at 537, 690 N.E.2d at 147. Rule 213's purpose is clear. To allow either party to ignore the rule's plain language defeats its purpose and encourages tactical gamesmanship. See *Chicago & Illinois Midland Ry. Co. v. Crystal Lake Industrial Park, Inc.*, 225 Ill. App. 3d 653, 658, 588 N.E.2d 337, 341 (1992). Although Dr. Zia's opinion was relevant to causation and damages (see *Wehmeier*, 213 Ill. App. 3d at 35, 572 N.E.2d at 339-40), the court did not abuse its discretion in refusing to allow OC to elicit Dr. Zia's opinion. See *Boatmen's*, 155 Ill. 2d at 314, 614 N.E.2d at 1198-99.

## 2. *Cards and Letters*

■ OC argues the admission of the cards and letters was cumulative to the plaintiff's and decedent's son's testimony and family photographs already admitted as evidence. Thus, the only purpose of their admission was to inflame the passions of the jury. Plaintiff contends OC failed to object at trial to the admission of the cards and letters; therefore, it forfeited the right to appeal the issue. See *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 163 Ill. 2d 498, 502, 645 N.E.2d 896, 898 (1994).

Here, OC did object to admission of the cards and letters at trial, but failed, at trial and on appeal, to assert any justification for finding the cards and letters inflammatory. The cards and letters contain expressions of love and friendship between decedent and plaintiff. Because decedent was unable to testify in person, the cards and letters provide evidence of his relationship with his wife. This evidence is relevant to plaintiff's loss of consortium claim. The court did not abuse its discretion in admitting this evidence.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN and GARMAN, JJ., concur.