VENETTA KAY JOHNSON, Indiv. and as Special Adm'r of the Estate of Charles E. Johnson, Deceased, Plaintiff-Appellant, Cross-Appellee, v. OWENS-CORNING FIBERGLASS CORPORATION *et al.*, Defendants (E.D. Bullard Company *et al.*, Defendants-Appellees, Cross-Appellants).

Third District   No. 3—96—0039

Opinion filed October 29, 1996.

James Wylder (argued), of James Walker, Ltd., of Bloomington, for appellant.

James R. Carter (argued), of Carter & Grimsley, of Peoria, for appellees Dresser Industries, Inc., E.D. Bullard Company, Magid Manufacturing Company, Standard Industrial Products Company, and Sager Corp.

Myrna Galang (argued) and Edward J. Matushek III, both of Haskell & Perrin, of Chicago, for appellee A&M Insulation Company.

Alexander M. Wilson (argued), of Evans & Dixon, of Edwardsville, for appellee Zoltek.

Colleen Konicek, of Connelly & Schroeder, of Chicago, for appellee Fibreboard Corp.

Karen L. Kendall, Christopher P. Larson, and Brad A. Elward (argued), all of Heyl, Royster, Voelker & Allen, of Peoria, for appellees A.P. Green Industries, Inc., Armstrong World Industries, and United States Gypsum.

Robert E. Haley (argued), of Wildman, Harrold, Allen & Dixon, of Chicago, for appellee Kaiser Aluminum & Chemicals.

Michael Drumke (argued) and William F. Mahoney, both of Segal, McCambridge, Singer & Mahoney, Ltd., of Chicago, for appellee Garlock, Inc.

PRESIDING JUSTICE BRESLIN delivered the opinion of the court:

Venetta Johnson, individually and as special administrator of the estate of Charles Johnson, filed a multicount complaint against numerous defendants asserting that Charles had contracted lung cancer from exposure to their asbestos-containing products. The trial court granted summary judgment to all defendants on the question of whether Charles' death was caused by exposure to asbestos. We hold that summary judgment was improper on the issue of medical causation because expert opinions based on hypothetical questions in combination with the testimony of co-employees gave rise to a triable question of fact. We also hold that the *Lohrmann* "frequency, regularity and proximity" test for asbestos product exposure applies at the summary judgment stage. *Lohrmann v. Pittsburg Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986). Additionally, we hold that summary judgment was improper as to defendants A.P. Green and Sager Glove

Company because a triable question remained as to whether their products caused or contributed to Charles' lung cancer. We thus affirm in part, reverse in part and remand.

## BACKGROUND

Charles Johnson worked in the wire mill at Keystone Steel & Wire Company in Bartonville, Illinois, almost continuously from 1955 until 1991, when he was diagnosed with lung cancer. He died on October 10 of that year. During the years preceding his death, Charles regularly smoked cigarettes.

The parties generated a substantial amount of discovery. Doctors Jeremiah Crabb, Daniel Parr and Revathi Swaminathan were among the physicians deposed in anticipation of trial. Dr. Parr was Charles' family physician. He testified that, assuming Charles had habitually smoked cigarettes and was occupationally exposed to asbestos, both factors would be implicated as causes of Charles' lung cancer. Dr. Jeremiah Crabb, a pulmonologist, testified that, in his opinion, assuming there had been occupational exposure in addition to cigarette usage, both factors could be implicated as "co-carcinogens." Dr. Revathi Swaminathan, an oncologist, testified in her deposition that she had insufficient factual data to state with a reasonable degree of medical certainty whether asbestos played any role in causing Charles' cancer. However, Dr. Swaminathan also stated that, assuming that there was exposure to asbestos, such exposure would be a contributing factor in causing Charles' lung cancer. In addition, Dr. Swaminathan signed an affidavit that was attached to plaintiff's response to defendants' motions for summary judgment. Therein Dr. Swaminathan stated that, in her opinion, occupational exposure to asbestos was a cause of Charles' lung cancer and lung cancer was the cause of his death.

In addition to testimony from physicians, the parties deposed several of Charles' co-employees from the Keystone plant. The employees testified about the various products used in the plant, and some employees testified as to when and where products were used with relation to Charles.

Because the facts in this case are involved and complex, we will make references to specific parties and any additional relevant facts in the appropriate portion of the discussion below. We note, however, as the parties have pointed out, that the trial court made an error in its order when it stated that Charles worked in the steel mill. We acknowledge the error and review this case *de novo* knowing that Charles was employed in the wire mill.

Most of the defendants moved for summary judgment following

discovery, arguing that no material issue of fact existed concerning medical causation. The defendants asserted that plaintiff could not put forth evidence demonstrating that Charles' death resulted from exposure to asbestos products rather than his smoking habits. Additionally, certain defendants moved for summary judgment on the basis that no issue of material fact existed concerning whether Charles had been exposed to their products. On December 8, 1995, the trial court entered an order granting summary judgment to all defendants. The court concluded that the evidence was insufficient to maintain an action for an injury caused by exposure to asbestos dust. Furthermore, the court granted several defendants summary judgment on the additional basis of insufficient evidence of product exposure. The plaintiff appeals the court's order granting summary judgment, and defendant E.D. Bullard cross-appeals the trial court's decision not to award it summary judgment on the issue of successor liability as well as medical causation.

## SUMMARY JUDGMENT

■ It cannot be said too often that summary judgment is a remedy that should be granted with caution. It should only be granted when the pleadings, depositions, admissions and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994); *Carruthers v. B.C. Christopher & Co.*, 57 Ill. 2d 376, 313 N.E.2d 457 (1974). This court's review of an order granting summary judgment is *de novo*. *Andrews v. Cramer*, 256 Ill. App. 3d 766, 629 N.E.2d 133 (1993).

## CAUSATION

■ In an asbestos case based upon negligence or strict products liability, it is essential that plaintiff prove that the defendant's asbestos was the "cause in fact" of the injury. Causation evidence may be direct or circumstantial; the latter type must justify an inference of probability rather than possibility. *Naden v. Celotex Corp.*, 190 Ill. App. 3d 410, 546 N.E.2d 766 (1989). However, the plaintiff has two burdens with respect to causation in fact. First, the plaintiff must prove medical causation—that asbestos was a cause of the injury. Second, plaintiff must show that the defendants' asbestos was a cause of the decedent's injuries. *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 603 N.E.2d 449 (1992). In this case, both of the plaintiff's burdens are at issue.

1. Medical Causation
■ We are first concerned with whether there is sufficient evi-

dence in the record for the plaintiff to meet her burden of proving that asbestos exposure caused or contributed to Charles' lung cancer. The defendants contend that the record demonstrates that the ultimate cause of death was Charles' smoking habit, not any exposure to asbestos, and that no evidence was put forth to suggest Charles died from exposure to asbestos. We disagree.

Several physicians testified on behalf of the plaintiff. Dr. Parr and Dr. Crabb testified that, assuming Charles was occupationally exposed to asbestos, such exposure would be "implicated" as a cause of the cancer. Additionally, Dr. Swaminathan provided an affidavit in which she concluded, based on information given to her, that if Charles was occupationally exposed to asbestos, the exposure would be a cause of Charles' lung cancer. Defendants argue that Swaminathan's affidavit should not be given any weight because it conflicts with her deposition testimony. Here the defendants rely on *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 583 N.E.2d 538 (1991) (nonmovant cannot use an affidavit to contradict prior deposition testimony to place material facts in issue). However, the statement in her deposition that she retained her affidavit opinion prevents *Vesey*'s application in this instance.

Additionally, several Keystone employees who worked in the wire mill during the periods Charles worked there testified that asbestos products were being used. For example, William Hendershott testified that asbestos gloves and asbestos-containing foil were used, as well as a product called Therm-O-Flake. James Todd testified that asbestos gloves were used. Donald Fessner testified that asbestos pipe insulation was used. James Murphy testified that a substantial number of asbestos-containing products were used at the Keystone plant.

The testimony of the three physicians presented evidence that, if there were occupational exposure, a jury could conclude that it played a part in causing the lung cancer. Now it is true that this testimony, standing alone, would not be sufficient to avoid summary judgment. See *Joiner v. General Electric Co.*, 864 F. Supp. 1310 (N.D. GA. 1994) (expert opinion of cause of plaintiff's lung cancer barred because expert made unfounded assumption that plaintiff was exposed to certain carcinogenic materials). However, when viewed in conjunction with the employees' testimony regarding Charles' occupational exposure to asbestos (see *Schultz v. Keene Corp.*, 729 F. Supp. 609 (N.D. Ill. 1990) (plaintiff can demonstrate exposure to particular products through testimony of co-workers)), a question arises as to whether asbestos played a role in causing the lung cancer. Therefore, we hold that an issue of fact concerning medical causation had been

presented which precluded summary judgment. We thus reverse the trial court's ruling on this issue.

2. Product Identification/Asbestos Exposure

The next issue is whether the evidence presented a triable issue of fact as to whether Charles' lung cancer was caused by exposure to certain defendants' products.

It is essential to plaintiff's case that she establish that Charles was exposed to an injury-causing, asbestos-containing product that was manufactured or supplied by a particular defendant. *Estate of Henderson v. W.R. Grace Co.*, 185 Ill. App. 3d 523, 541 N.E.2d 805 (1989). We must first determine what test should be employed at the summary judgment stage to ascertain whether plaintiff has met her burden with respect to product exposure.

Plaintiff maintains that she does not carry any burden on summary judgment. Rather, she insists that it is the defendants' burden to establish their right to judgment as a matter of law, even in the absence of any evidentiary matter filed by plaintiff in opposition to the motion for summary judgment. While the defendants do not deny that they must establish their right to judgment as a matter of law, they contend that in order for the plaintiff to defeat a motion for summary judgment, the plaintiff must show exposure to a particular defendant's product.

■ In *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), a case involving alleged asbestos exposure in a shipyard, the court fashioned a rule that is referred to as the "frequency, regularity and proximity" test. This test was specifically adopted by our supreme court in *Thacker*, 151 Ill. 2d at 359, 603 N.E.2d at 457. It requires that a plaintiff "show that the injured worker was exposed to the defendant's asbestos through proof that (1) he regularly worked in an area where the defendant's asbestos was frequently used and (2) the injured worker did, in fact, work sufficiently close to this area so as to come into contact with the defendant's product." *Thacker*, 151 Ill. 2d at 359, 603 N.E.2d at 457.

Plaintiff, however, correctly points out that the court in *Thacker* did not apply this test at the summary judgment stage. The test was applied following a verdict when the issue concerned whether a directed verdict or judgment notwithstanding the verdict was mandated. Plaintiff argues that it would be improper to apply the "frequency, regularity and proximity" test at the summary judgment stage. However, we find *Lohrmann* to be instructive on this point.

In *Lohrmann*, the court considered, among other things, a district court's award of directed verdicts to three manufacturers of asbestos

products that were used in the plaintiff's workplace. At the close of the plaintiff's case, the trial court directed a verdict in favor of the defendants, ruling that insufficient evidence had been presented to show causation between the use of the products and the plaintiff's asbestosis. On appeal, the plaintiff urged the court to adopt a rule that would allow a plaintiff to present the issue of causation to a jury so long as he could present any evidence that he was present at the workplace at the same time as a defendant's asbestos-containing product. The court rejected this argument, concluding it would be contrary to the law of substantial causation, especially when considering the size of the plaintiff's workplace. *Lohrmann*, 782 F.2d at 1162.

The court then looked to the district court's application of the "frequency, regularity and proximity" test employed by the district judge at the summary judgment stage. The court concluded, in *dicta*, that such an application of the test would have a *de minimus* effect because it simply requires a plaintiff to prove more than minimum contact. It reasoned that such a requirement would be reasonable considering the length of time needed for asbestosis to develop. Without proof of such exposure, a reasonable inference of substantial causation cannot be made. *Lohrmann*, 782 F.2d at 1162-63. We agree.

To allow plaintiff to present her case to the jury based on mere allegations would be inconsistent with the requirement of some proof that the defendant's conduct caused the injury. See Restatement (Second) of Torts § 431, Comment (a) (1965). Unless there is sufficient evidence for the jury to reasonably conclude that the defendant's conduct was a cause of the plaintiff's injury, plaintiff cannot present the question of causation to the jury. *Thacker*, 151 Ill. 2d at 355, 603 N.E.2d at 455; see *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480 (11th Cir. 1985); *Schultz v. Keene Corp.*, 729 F. Supp. 609 (N.D. Ill. 1990) (by showing that plaintiff worked "with or in close proximity" to defendant's asbestos product, plaintiff can overcome motion for summary judgment). Plaintiff, therefore, has the burden of proving more than just minimal contact with a defendant's asbestos product. We do not think this is too heavy a burden for plaintiff to bear. Such a result balances the plaintiff's difficulties in proving product exposure with the defendant's right to be free from liability based upon speculation and guesswork. See *Thacker*, 151 Ill. 2d at 359, 603 N.E.2d at 457.

Therefore, we hold that in order to survive a motion for summary judgment on the issue of exposure to a defendant's asbestos product, the plaintiff must put forth some evidence tending to show that (1) the decedent regularly worked in an area where the defendant's asbestos was frequently used and (2) the decedent worked

close enough to this area to come into contact with the defendant's product.

■ Several of the defendants were granted summary judgment in this case because the trial court found that there was no triable issue of fact as to whether Charles was exposed to their products. We will discuss the proffered evidence concerning each defendant individually.

### A. Zoltek Corporation

Zoltek president Zsolst Rumy testified in his deposition that Zoltek sold asbestos products to Keystone. This testimony is supported by invoices, as well as the deposition testimony of Charles Brown, who purchased products for Keystone during at least some of the years Charles worked there.

Zoltek's summary judgment motion, however, included no supporting affidavits or other evidence. The plaintiff argues that the failure to attach supporting affidavits and documents permits her to overcome a motion for summary judgment on the basis of her well-pleaded facts. She is in error, however, as the court may look to the entire record to determine whether a triable issue of fact does indeed exist. *Carruthers v. B.C. Christopher & Co.*, 57 Ill. 2d 376, 313 N.E.2d 457 (1974). Moreover, defendant can obtain summary judgment by simply establishing that plaintiff cannot prove a necessary element of her case. See *Zimmer v. Celotex Corp.*, 192 Ill. App. 3d 1088, 549 N.E.2d 881 (1989), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

In the present case, there is no evidence indicating where in the Keystone plant the Zoltek products were used. Without such evidence, plaintiff cannot establish even a minimum level of contact and thus cannot meet the *Thacker* standard. Therefore, summary judgment was appropriate as to Zoltek.

### B. A.P. Green Industries, Inc.

The plaintiff produced the deposition testimony of William Hendershott, a brick mason who worked for Keystone for many of the same years as Charles. Hendershott testified that he often used a product called Thermo-O-Flake from 1959 until it was renamed and the asbestos was removed from the product in the 1980s. Therm-O-Flake was an A.P. Green product that contained asbestos. Hendershott testified that when he used the product he would mix it in a concrete-type mixer and clouds of dust would rise. Moreover, Hendershott testified that other employees could be exposed to the dust if they were passing through the area.

A.P. Green argues that insufficient evidence was put forth regarding the particular asbestos-containing product used, the area in which it was used, and the regularity of Charles' employment within a zone reached by the fiber drift. We disagree.

Hendershott's deposition testimony described how long he used the materials and the fact that he used Therm-O-Flake with regularity. He also testified that its use created dust in the very mill where Charles was employed. Anyone who walked through Hendershott's area would be exposed to the dust, and countless others would be exposed to the particles drifting throughout the mill. We think that a triable issue of fact exists as to whether Charles was sufficiently exposed to Therm-O-Flake to find causation. See *Thacker*, 151 Ill. 2d at 364-65, 603 N.E.2d at 459 (decedent was in sufficient proximity to asbestos due to fiber drift even though product was processed in different part of plant). Therefore, we reverse the trial court's judgment granting A.P. Green summary judgment.

C. Sager Glove Company

Keystone purchased 200 pairs of asbestos gloves from Sager. Keystone's purchase order for the gloves states, in longhand, "WM Welding, Galv, Pat, + others." The plaintiff claims that this statement establishes that the gloves were used in the welding, galvanizing, and patenting departments of the wire mill where Charles worked. Further, William Hendershott and James Todd testified that the employees in the mill regularly used gloves similar to those sold by Sager. Although we do not think an inference can be drawn from the purchase order alone, when viewed in combination with the testimony of these employees, we think a triable issue of fact exists as to whether the gloves caused or contributed to Charles' cancer. A jury could reasonably infer that Charles came into contact with Sager's gloves on a regular basis. Therefore, the decision granting Sager summary judgment is reversed.

D. Garlock, Inc.

In an answer to an interrogatory, plaintiff stated that James Riggenbaugh and Denny Brown could testify that Charles was exposed to Garlock's asbestos-containing products, such as Garlock galvanizing pads and Garlock packings. James Riggenbaugh was not deposed and we have found no testimony or affidavit of Denny Brown in the record, but there is a Charles Brown who was deposed. Charles Brown testified, however, that he did not know where any Garlock products may have been used at Keystone.

Plaintiff argues that her interrogatory answer precludes sum-

mary judgment. However, Garlock correctly points out that the answer would be inadmissible at trial and may not be considered at the summary judgment stage. See *Abel v. General Motors Corp.*, 155 Ill. App. 3d 208, 507 N.E.2d 1369 (1987). Plaintiff's answer to the interrogatory is clearly inadmissible hearsay. Therefore, the answer is not evidence that could defeat Garlock's motion for summary judgment, and the trial court properly granted Garlock's motion.

E. A&M Insulation Company

Evidence against A&M consists of records that establish that it sold transite, an asbestos-containing product, to Keystone. Although the documents reveal that transite was sold to the wire mill between 1967 and 1971, this evidence does not support an inference that the wire mill used it in a manner that would cause asbestos exposure to Charles. Without evidence that Charles regularly worked in proximity to the product, or that the product emitted a dust of some type, plaintiff cannot succeed against A&M Insulation. Since there was no evidence to suggest any dust was created or that the product was frequently and regularly used in Charles' proximity, summary judgment in A&M's favor was appropriate.

F. Kaiser Aluminum & Chemical Corporation

Plaintiff relies on the deposition testimony of several employees who established that Kaiser firebrick was used at Keystone. One employee testified that he had observed Charles handling Kaiser firebrick. However, Kaiser provided an affidavit of William Boyd, a Kaiser employee who claimed to have personal knowledge of the composition of Kaiser products, wherein Boyd stated that Kaiser's firebrick did not contain asbestos. Plaintiff did not put forth evidence to contest this affidavit. Therefore, because there is no evidence that Kaiser firebrick contained asbestos or caused asbestos exposure at Keystone, summary judgment was properly awarded to Kaiser.

G. Dresser Industries, Inc.

The evidence against Dresser consists of two affidavits. The first affidavit was not drafted for this case. It was originally filed in a previous case titled Costa v. Armstrong World Industries, No. 88 L 239 (Peoria County circuit court) by Ken Mayberry, a Keystone employee. Mayberry stated in his affidavit that he worked at Keystone from 1952 until 1988. He stated further that several Harbison-Walker (a Dresser subsidiary) products were sent to Keystone and that they were used in areas where the decedent in Costa v. Armstrong World Industries worked. Nothing in the record, however, indicates that

Nick Costa worked in the same area as Charles. Additionally, Mayberry began working at Keystone earlier than Charles, and there is no evidence suggesting when Costa worked there.

The second affidavit was from Nichol Jameson, a Harbison-Walker employee. Jameson's affidavit, however, merely reflects that Dresser sold more products to Keystone than those originally identified by Dresser. Neither affidavit sheds any light on potential asbestos exposure to Charles. Hence, summary judgment was properly awarded to Dresser.

## SUCCESSOR LIABILITY

■ Finally, E.D. Bullard argues that it is wrongfully being sued for the acts of a predecessor in interest and that the trial court should have granted summary judgment in its favor on this basis as well. Bullard purchased the assets and liabilities of Standard Industrial Products Company of Illinois (Standard) in 1979. Thereafter, Bullard operated under the name of Standard Industrial Products Company.

Bullard claims that the plaintiff is attempting to hold it liable for Standard's actions prior to the 1979 purchase and that this is inappropriate under the doctrine of successor liability. Plaintiff insists, however, that she is not attempting to hold Bullard liable for Standard's actions, but instead is attempting to hold it liable for its own post-purchase actions. We agree.

As plaintiff readily concedes, she may not seek damages from Bullard for Standard's actions prior to the 1979 sale. *Hoppa v. Schermerhorn & Co.*, 259 Ill. App. 3d 61, 630 N.E.2d 1042 (1994). However, she may assert a cause of action for any post-purchase asbestos exposure. Therefore, summary judgment was properly denied to Bullard. Any concern Bullard may have about jury confusion over this issue may be avoided by filing the appropriate pretrial motions to limit the evidence to post-1979 occurrences.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

LYTTON and McCUSKEY, JJ., concur.