Donelda C. VAUGHN, Individually and as Personal Representative of the Heirs and Estate of Ronald Vaughn, Deceased, Appellant,

v.

FORD MOTOR COMPANY et al, Appellees.

No. 11–01–00292–CV.

Court of Appeals of Texas, Eastland.

Oct. 24, 2002.

Rehearing Overruled Jan. 9, 2003.

Charles Siegel, F. Leighton Durham III, David Greenstone, Waters & Kraus, Dallas, Daryl L. Moore, Storey, Moore & McCalley, P.C., Houston, for Appellant.

Aditi Dravid, Joseph Pevsner, Scott P. Stolley, Thompson & Knight, Dallas, Bernardo Garza, Callier & Garza, Houston, David P. Herrick, Herrick & Associates, P.C., Dallas, Elizabeth Pratt, Mehaffy & Weber, Beaumont, Joseph Blizzard, Robert Thackston, Jenkins & Gilchrist, Dallas, Sean Higgins, Brown McCarroll, Arthur Almquist, Houston, Craig A. Morgan, Brown McCarroll L.L.P., Austin, Elizabeth Phifer, Godwin White & Gruber, Gary D.

Elliston, DeHay & Blanchard, Dallas, for Appellees.

Panel consists of ARNOT, C.J., and McCALL, J., and McCLOUD, S.J.*

## Opinion

AUSTIN McCLOUD, Senior Justice (Retired).

The issues in this case concern the exclusion of expert witnesses, the attempted withdrawal of a response to a request for admission, the granting of a motion for partial summary judgment, and the granting of motions for directed verdict. The plaintiff, Donelda C. Vaughn, individually and as personal representative of the heirs and estate of Ronald Vaughn, deceased, filed suit against 42 companies for damages related to her husband's injuries and death, which were allegedly caused by exposure to asbestos. The only defendants involved in this appeal are Ford Motor Company; General Motors Corporation; Daimler Chrysler Corporation; Allied Signal, Inc.; Borg–Warner Corporation; and Uniroyal Holding Company.[1] Applying Illinois[2] substantive law, the trial court granted the defendants' motions for directed verdict and entered a take-nothing judgment against the plaintiff. We affirm.

### Issues Presented

The plaintiff presents six issues for review. In the first and sixth issues, the plaintiff contends that the trial court erred in granting the defendants' motions for directed verdict. In the second issue, the plaintiff contends that the trial court erred

---

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

1. We note that the plaintiff also appealed with respect to United States Gypsum Company. However, because of United States Gypsum Company's bankruptcy proceeding, this court entered an order of severance. The appeal with respect to United States Gypsum Company, Cause No. 11–00–00299–CV in this court, remains abated pending the resolution of the bankruptcy proceeding.

2. The parties agreed at trial and on appeal that Illinois substantive law controls this case.

in imposing a "death penalty" sanction when it granted the defendants' motion to exclude all but one of her expert witnesses. In the third issue, the plaintiff complains of the exclusion of interrogatory answers filed by some of the defendants in other cases. In the fourth issue, the plaintiff complains of the trial court's refusal to allow her to withdraw an admission. In the fifth issue, the plaintiff argues that the trial court erred in granting Uniroyal's motion for partial summary judgment.

### Exclusion of Witnesses

In her second issue, the plaintiff contends that the trial court erred in imposing a "death penalty" sanction when it granted the defendants' motion to exclude all but one of her expert witnesses. The plaintiff's complaint on appeal is limited to three of these experts: Richard L. Hatfield; Douglas Alan Pohl, M.D.; and Barry I. Castleman, Sc.D. For each of these three experts, the plaintiff filed a bill of exception consisting of an affidavit summarizing the expert's proposed testimony.

The trial court excluded the plaintiff's experts because of the plaintiff's failure to comply with TEX.R.CIV.P. 195 and with the trial court's scheduling order. Rule 195.3 mandates that, where no expert report is furnished at the time of designation, a party seeking affirmative relief "must make the expert available for deposition reasonably promptly after the expert is designated." [3] The comment to Rule 195 provides that a party seeking affirmative relief "must either produce an expert's report or tender the expert for deposition before an opposing party is required to designate experts." The plaintiff did not furnish a report with respect to any of these three experts, and she did not make them available for deposition reasonably promptly after designation.

The record shows that the plaintiff filed the petition in this case on March 5, 1998,[4] and that this case was the oldest case on the trial court's docket. On March 22, 2000, the trial court set forth the following dates in its scheduling order: trial was set for July 24, 2000; the plaintiff was to produce "each Plaintiff" for deposition and provide "expert medical reports" no later than May 25, 2000; the defendants were to produce expert medical reports no later

---

3. Rule 195.3 reads in full as follows:

(a) *Experts for Party Seeking Affirmative Relief.* A party seeking affirmative relief must make an expert retained by, employed by, or otherwise in the control of the party available for deposition as follows:

(1) If no report furnished. If a report of the expert's factual observations, tests, supporting data, calculations, photographs, and opinions is not produced when the expert is designated, then the party must make the expert available for deposition reasonably promptly after the expert is designated. If the deposition cannot—due to the actions of the tendering party—reasonably be concluded more than 15 days before the deadline for designating other experts, that deadline must be extended for other experts testifying on the same subject.

(2) If report furnished. If a report of the expert's factual observations, tests, sup-

porting data, calculations, photographs, and opinions is produced when the expert is designated, then the party need not make the expert available for deposition until reasonably promptly after all other experts have been designated.

(b) *Other Experts.* A party not seeking affirmative relief must make an expert retained by, employed by, or otherwise in the control of the party available for deposition reasonably promptly after the expert is designated and the experts testifying on the same subject for the party seeking affirmative relief have been deposed.

4. The record indicates that the plaintiff had originally brought suit in Lamar County but that she had subsequently dismissed that case and then refiled it in Dallas County on March 5, 1998.

than June 1, 2000; all parties were to designate testifying experts no later than June 23, 2000; and discovery was to be completed no later than June 28, 2000.

On May 19, 2000, the plaintiff faxed her supplemental discovery responses to the defendants' attorneys. In the supplemental response to the defendants' request for disclosure of testifying experts pursuant to TEX.R.CIV.P. 194.2(f), the plaintiff specifically listed 85 experts and referenced various other depositions and exhibits filed in other cases. Included in this rather extensive list of experts were Dr. Castleman, Dr. Pohl, and Hatfield. The plaintiff furnished to the defendants only one expert report, that of Dr. James A. Robb. On June 5, 2000, the defendants requested the plaintiff to "provide dates for the depositions of any of [the plaintiff's] experts who may testify or have opinions regarding friction products." Defense counsel noted, "If you are hoping for the current trial setting to be realistic, this will obviously need to happen quickly." On June 7, plaintiff's counsel responded but failed to provide any dates for expert depositions. In the June 7 letter, plaintiff's counsel stated:

I will be more than happy to provide you with depositions of any co-workers and experts whom we intend to rely on in our case in chief, provided, of course, that you are willing to agree to provide us with depositions of all witnesses whom you intend to rely on at the trial of this case. I will also agree to provide our witnesses for deposition first, but then you must agree to provide your witnesses for deposition shortly thereafter.

If you are willing to enter into such an agreement, please contact me as soon as possible so that I can determine available dates for my witnesses.

On June 16, 2000, the defendants, having received no proposed dates on which to depose the plaintiff's experts, noticed the depositions of any and all of the plaintiff's experts that may be called to testify regarding friction products or asbestos-containing brake shoes. The depositions were noticed for June 23. On June 20, the plaintiff filed a motion to quash the defendants' deposition notices. The plaintiff notified the defendants on June 19 that Donelda Vaughn would be available for deposition on July 7, 2000; that Dr. Castleman would be available for deposition on July 14, 2000, in Baltimore, Maryland; that Dr. Pohl would be available for deposition on July 17, 2000, in Lewiston, Maine; and that Hatfield would be available for deposition in Atlanta, Georgia, on July 19, 2000. In the June 19 notification, plaintiff's counsel requested that defendants notice these depositions by 5:00 p.m. on June 21 because "these witnesses are very busy and cannot keep dates open for long." One defendant noticed the depositions for those dates but later withdrew its notice due to the untimeliness of the dates. On June 23, 2000, in her second supplemental responses to discovery requests, the plaintiff designated a total of 97 experts.

On June 27, 2000, due to the lack of opportunity to timely conduct the depositions and discover the opinions of the plaintiff's experts, the defendants filed a motion to exclude the plaintiff's experts or, alternatively, to compel discovery, amend the scheduling order, and continue the case. On July 7, 2000, defense counsel notified plaintiff's counsel that the defendants were willing to agree to a short postponement of the trial to resolve the discovery issues. In response, plaintiff's counsel notified the defendants that Dr. Pohl and Dr. Castleman were no longer available to be deposed prior to the July 24 trial date, that plaintiff would be available

on July 20, and that Hatfield would be available on July 19.

The plaintiff filed a response opposing the defendants' motion for exclusion/continuance. In the response, the plaintiff cited *TransAmerican Natural Gas Corporation v. Powell*, 811 S.W.2d 913 (Tex. 1991), and noted that sanctions which are so severe as to preclude the presentation of the merits of the plaintiff's case should not be assessed. At the hearing held on July 21, 2000, plaintiff's counsel argued that the defendants were at fault and that "they are going to have to do the best they can with these witnesses based on the discovery done in the past." By that time, the plaintiff had narrowed the number of experts she planned to call at trial to six. The trial court granted the defendants' motion to exclude all of the plaintiff's experts except for Dr. Robb. Dr. Robb testified at trial.

The defendants assert on appeal that exclusion of the experts was not a discretionary sanction but, rather, was automatic under TEX.R.CIV.P. 193.6 (formerly Rule 215.5). We disagree. Rule 193.6(a) provides that unless good cause or the lack of unfair surprise is shown:

> A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified.

Rule 193.6 does not apply to the circumstances presented in this case. Hatfield, Dr. Pohl, and Dr. Castleman were timely identified, and synopses of their testimony and opinions were disclosed in the plaintiff's supplemental response. See Rule 194.2(f).

 Therefore, we must determine whether the trial court abused its discre-

tion in excluding the experts as a discretionary sanction under TEX.R.CIV.P. 215 for the abuse of discovery. A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. den'd*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). When imposing sanctions for discovery abuses, a trial court must look to the Texas Rules of Civil Procedure for guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, supra at 242.

Rule 215.2 requires that the sanction imposed be "just." See *TransAmerican Natural Gas Corporation v. Powell*, supra at 917 (applying a former, similar version of Rule 215 that also required the sanction to be "just"). The court in *TransAmerican* set forth the following standards as setting the bounds for permissible discretionary sanctions under Rule 215:

> In our view, whether an imposition of sanctions is just is measured by two standards. First, a direct relationship must exist between the offensive conduct and the sanction imposed. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. It also means that the sanction should be visited upon the offender. The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. This we recognize will not be an easy matter in many instances. On the one hand, a lawyer cannot shield his client from sanctions; a party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules. On the other hand, a party should not be punished for coun-

sel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation. The point is, the sanctions the trial court imposes must relate directly to the abuse found.

Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. *TransAmerican Natural Gas Corporation v. Powell,* supra at 917.

The Texas Rules of Civil Procedure also include two discovery rules that favor less stringent sanctions and indicate that the sanctions imposed in this case were excessive. Rule 195.3(a)(1) and Rule 190.5 generally require a trial court to extend the deadlines and allow additional discovery to give the parties an adequate opportunity to complete discovery. Rule 195.3(a)(1) provides that, when a "deposition cannot— due to the actions of the tendering party— reasonably be concluded more than 15 days before the deadline" for the party not seeking affirmative relief to designate its experts, "that deadline must be extended." Rule 190.5 provides that the trial court "must allow additional discovery" related to new information disclosed in a discovery response if the response was made after or near the deadline for completion of discovery such that the adverse party would be denied an adequate opportunity to conduct discovery regarding the new matters and if the adverse party would otherwise be unfairly prejudiced.

The plaintiff had a duty under Rule 195.3 to make her experts available reasonably promptly after designation. The plaintiff did not comply with this duty. The plaintiff supplemented her discovery responses to designate a total of 97 experts and narrowed the list to 6 only shortly before the trial date. The plaintiff then opposed the defendants' request for additional time to depose the plaintiff's experts and complete discovery. Although this conduct, which was attributable to plaintiff's counsel, was sanctionable, we find that the sanctions imposed in this case were excessive. Thus, we must hold that the trial court abused its discretion. *TransAmerican Natural Gas Corporation v. Powell,* supra.

*Reversible Error, Directed Verdict, and Illinois Law*

Having found error, we must next determine if the error is reversible. TEX. R.APP.P. 44.1. An error is reversible if it "probably caused the rendition of an improper judgment." Rule 44.1(a). The error in this case prevented the plaintiff from introducing expert testimony regarding the amount of asbestos generated by working with asbestos-containing products and the link between Vaughn's inhalation of asbestos dust and his mesothelioma. The plaintiff asserts that the error ultimately resulted in a directed verdict in favor of the defendants. However, the defendants contend that, regardless of the lack of expert testimony, the trial court properly granted their motions for directed verdict.

The defendants that manufactured brake products—Ford, General Motors, Chrysler, Allied Signal, and Borg–Warner—contend that directed verdicts in their favor were appropriate because the plaintiff failed to introduce evidence to satisfy "the frequency, regularity and proximity test" that is the law in Illinois. *Thacker v. UNR Industries, Inc.,* 151 Ill.2d 343, 177 Ill.Dec. 379, 603 N.E.2d 449, 457 (1992). In *Thacker,* the Illinois Supreme Court adopted the frequency, regularity,

and proximity test to be applied to the element of causation. Under this test, a plaintiff must show that the injured worker was exposed to the defendant's asbestos through proof that (1) he regularly worked in an area where the defendant's asbestos was frequently used and (2) he worked sufficiently close to this area so as to come into contact with the defendant's product. The court adopted this approach in an "attempt to seek a balance between the needs of the plaintiff (by recognizing the difficulties of proving contact) with the rights of the defendant (to be free from liability predicated upon guesswork)." *Thacker v. UNR Industries, Inc.*, supra at 457. When applying the frequency, regularity, and proximity test to cases involving multiple defendants, the courts in Illinois and in other jurisdictions determine whether the test has been met as to each defendant, rather than the defendants collectively, even though these courts recognize that there can be more than one cause of an injury. See *Robertson v. Allied Signal, Inc.*, 914 F.2d 360 (3d Cir.1990); *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162–64 (4th Cir.1986); *Chavers v. General Motors Corporation*, 349 Ark. 550, 79 S.W.3d 361 (2002)(an asbestos case against brake manufacturers); *Johnson v. Owens–Corning Fiberglass Corporation*, 284 Ill.App.3d 669, 220 Ill. Dec. 68, 672 N.E.2d 885, 889–92 (3d Dist. 1996), *appeal den'd*, 171 Ill.2d 567, 222 Ill.Dec. 431, 677 N.E.2d 965 (1997); see also *Ford Motor Company v. Wood*, 119 Md.App. 1, 703 A.2d 1315 (Ct.Spec.App.), *cert. den'd*, 349 Md. 494, 709 A.2d 139 (1998).

■ In the present case, the only evidence offered regarding product identification and the frequency, proximity, and regularity of the exposure to the products was the testimony of Ronald Vaughn by videotaped and written deposition. Vaughn tes-tified that he was 45 years old and that he worked as an auto mechanic for approximately 3 years in the early 1970s. Among his various duties was replacing brake shoes. He testified that he inhaled the dust from these brake shoes when he removed the old ones, which contained no identifying marks, and when he ground the replacements to fit. According to Vaughn, he did a brake job almost every day, but he could not estimate what percent of his time was spent doing brake work. Vaughn testified that he installed the brake products of Borg–Warner, Bendix (attributed to Allied Signal), Wagner (who was not a defendant at the time of trial), Ford, General Motors, and Chrysler. Vaughn stated that he recalled seeing these names on the boxes that he opened. Vaughn testified that he generally installed whatever brand of product was stocked by the supply house. He did not remember the name of the supply house. No other witnesses testified regarding product identification or frequency of use; and no documentary evidence, such as invoices for brake products from a supply house to Vaughn's places of employment, was introduced. Vaughn was asked the following question regarding the frequency of product use: "And you used them all equally, one more than another, one less than another?" Vaughn replied, "I couldn't tell you."

We find the present case to be somewhat similar to *Ford Motor Company v. Wood*, supra, and *Chavers v. General Motors Corporation*, supra. In *Wood*, the court applied the frequency, proximity, and regularity test in an asbestos-related brake case. The court held that, although the plaintiff presented sufficient evidence from which a jury could infer that the injured worker's exposure to asbestos-containing brake and clutch products was a cause of his mesothelioma, the plaintiff failed to present sufficient evidence to cre-

ate a jury question as to Ford's liability because the plaintiff failed to meet the frequency, proximity, and regularity test regarding the worker's exposure to brake and clutch products manufactured by Ford as opposed to another manufacturer. *Ford Motor Company v. Wood,* supra. In *Chavers,* the court applied the frequency, regularity, and proximity test to uphold the granting of a summary judgment in favor of brake manufacturers. Chavers was a "shade tree mechanic" who replaced the brakes on cars for family and friends for 44 years. Chavers identified the brands of replacement brakes that he used, but the brakes he removed were generally unidentifiable. *Chavers v. General Motors Corporation,* supra.·

■ Likewise, we hold that the plaintiff failed to produce any probative evidence to satisfy the frequency element of the test adopted by Illinois. A directed verdict is proper if, when viewed in the light most favorable to the party against whom the verdict was directed, there is no evidence of probative value that raises a material fact issue. *Prudential Insurance Company of America v. Financial Review Services, Inc.,* 29 S.W.3d 74, 77 (Tex.2000); *Qantel Business Systems, Inc. v. Custom Controls Company,* 761 S.W.2d 302, 303–04 (Tex.1988). Although there was evidence from which a jury could have found that Vaughn's exposure to asbestos-containing brake products was a cause of his disease and evidence that each exposure contributed to his disease, there was no evidence from which a jury could have found that Vaughn was frequently exposed to any particular defendant's brake product. Because a directed verdict in favor of each defendant brake manufacturer was proper on this ground and because nothing in the bills of exception regarding the excluded expert witnesses indicates any bearing on the issue of product identifica-

tion or the frequency of Vaughn's exposure to a particular product, the error in excluding the witnesses did not cause the rendition of an improper judgment. See Rule 44.1. Consequently, we hold that the error in excluding those experts was harmless as to Ford, General Motors, Chrysler, Allied Signal, and Borg–Warner.

The directed verdict in favor of Uniroyal was also proper on grounds unrelated to the error in excluding the witnesses. The plaintiff's claim against Uniroyal was limited at trial to an intentional tort cause of action—a claim that Uniroyal specifically intended to injure Vaughn. Nothing in the record or the bills of exception indicates that the excluded experts' testimony would have had any bearing on the plaintiff's intentional tort claim against Uniroyal. Consequently, the exclusion of those experts did not "probably cause" the rendition of an improper judgment in favor of Uniroyal. Rule 44.1.

We hold, therefore, that the error in excluding Hatfield, Dr. Pohl, and Dr. Castleman is not reversible error. The second issue is overruled. The first issue, in which the plaintiff argues that instructing a verdict in favor of the brake manufacturers was erroneous, is overruled because the plaintiff presented no probative evidence of the frequency of Vaughn's exposure to any particular defendant's asbestos-containing product. We need not reach the merits of the third issue, which concerns the exclusion of interrogatory answers filed by some of the non-Uniroyal defendants in other cases, because those answers have no bearing on the propriety of the directed verdicts. TEX.R.APP.P. 47.1. The interrogatories do not relate to the frequency with which Vaughn used any brake products or to the plaintiff's intentional tort claim.

*Denial of Request to Withdraw
Admission*

In her fourth issue, the plaintiff contends that the trial court erred by denying her request to withdraw an admission that she had made regarding Uniroyal's status as Vaughn's former employer. The record shows that, on February 25, 1999, the plaintiff responded to Uniroyal's request for admissions by admitting that Vaughn "was employed by Uniroyal when he worked at the garage Uniroyal leased from K–Mart in Joliet, Illinois." On July 17, 2000, only one week before trial, the plaintiff requested leave to amend her admission to state that she was unable to admit or deny that Vaughn was employed by Uniroyal. Attached to the motion was an itemized statement from the Social Security Administration that was sent to plaintiff's counsel on March 9, 2000. This statement reflected that Vaughn had earnings in 1971 and 1972 from "Moline Tire Service, Inc."

■ A trial court has discretion, pursuant to TEX.R.CIV.P. 198.3, to permit a party to withdraw an admission if the party shows good cause and if the trial court finds that the party relying on the admission will not be unduly prejudiced. See *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex.1996). In this case, the trial court held a hearing on the plaintiff's motion requesting leave to amend; however, that hearing was held off the record and is not part of the appellate record. The trial court subsequently stated on the record that it had denied the motion. We are unable to determine from the appellate record whether the trial court abused its discretion in denying the plaintiff's request. Moreover, we note that Vaughn's deposition testimony unequivocally reflects that he worked for Uniroyal in a garage located at a K–Mart and that K–Mart leased the garage to Uniroyal through a division of Uniroyal. The fourth issue is overruled.

*Uniroyal's Partial Summary Judgment*

■ In the fifth issue, the plaintiff contends that the trial court erred in granting Uniroyal's motion for partial summary judgment. In its order granting partial summary judgment, the trial court dismissed the plaintiff's negligence, gross negligence, and strict liability claims against Uniroyal because of Uniroyal's employer/employee relationship with Vaughn. In Illinois, the Workers' Compensation Act and the Workers' Occupational Diseases Act provide the exclusive remedy for claims against employers unless the injury was not accidental, was not employment related, or was not compensable under the Acts. *Handley v. Unarco Industries, Inc.*, 124 Ill.App.3d 56, 79 Ill.Dec. 457, 463 N.E.2d 1011, 1021–22 (4th Dist.1984); see *Meerbrey v. Marshall Field and Company, Inc.*, 139 Ill.2d 455, 151 Ill.Dec. 560, 564 N.E.2d 1222 (1990).

We will apply the well-recognized standard of review for traditional summary judgments. We must consider the summary judgment evidence in the light most favorable to the non-movant, indulging all reasonable inferences in favor of the non-movant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546 (Tex.1985); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979). In order for a defendant to be entitled to summary judgment, the defendant must either disprove an element of each cause of action or establish an affirmative defense as a matter of law. *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); *Science Spectrum,*

*Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

In support of its motion, Uniroyal attached the plaintiff's admission that Uniroyal was Vaughn's employer and Vaughn's deposition testimony indicating that he was employed by Uniroyal. These documents established Uniroyal's status as Vaughn's employer. The reporter's record from the motions hearing reveals that the trial court struck the summary judgment evidence relied upon by the plaintiff. Accordingly, we will not consider that evidence. As Vaughn's employer, Uniroyal was entitled to judgment as a matter of law on the causes of action that did not fall into an exception to the Illinois exclusive remedy provisions. We hold that the trial court properly granted Uniroyal's motion for partial summary judgment. The fifth issue is overruled.

### Uniroyal's Directed Verdict

 After the close of the plaintiff's evidence, the trial court granted not only the brake manufacturers' motions for directed verdict, but also Uniroyal's motion for directed verdict. The only cause of action remaining against Uniroyal was an intentional tort claim under which the plaintiff must have produced some probative evidence that Uniroyal intended to injure or harm Vaughn. See *Handley v. Unarco Industries, Inc.*, supra; see also *Bercaw v. Domino's Pizza, Inc.*, 258 Ill. App.3d 211, 196 Ill.Dec. 469, 630 N.E.2d 166 (2d Dist.1994); *Copass v. Illinois Power Company*, 211 Ill.App.3d 205, 155 Ill.Dec. 600, 569 N.E.2d 1211 (4th Dist.), *appeal den'd*, 141 Ill.2d 537, 162 Ill.Dec. 484, 580 N.E.2d 110 (1991). The plaintiff failed to produce any such evidence. The plaintiff produced evidence showing that Uniroyal was aware of the dangers posed by asbestos and that a Uniroyal "asbeston" plant in Georgia had reported some OSHA violations. However, the plaintiff produced no evidence regarding the conditions of the service center where Vaughn was employed or Uniroyal's knowledge of any such conditions. There was no evidence from which a jury could have inferred that Uniroyal intended to injure Vaughn or that Uniroyal directed, encouraged, or committed an intentional tort. Because the plaintiff failed to produce any probative evidence on this issue, Uniroyal was entitled to a directed verdict. See *Prudential Insurance Company of America v. Financial Review Services, Inc.*, supra; *Qantel Business Systems, Inc. v. Custom Controls Company*, supra. The sixth issue is overruled.

The judgment of the trial court is affirmed.