FOURTH DIVISION

MARCH 13, 2003

1-01-3050

MARTIA THORNHILL, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

           )

v. ) 

)

MIDWEST PHYSICIAN CENTER OF ORLAND PARK )

and DR. MARI ANN HERBERT, Individually )

and as Agent or Employee of MIDWEST )

PHYSICIAN CENTER OF ORLAND PARK, ) Honorable

) Richard B. Berland

Defendants-Appellees.    ) Judge Presiding.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Martia Thornhill, appeals from a jury verdict in favor of defendants, Midwest Physician Center of Orland Park and Dr. Mari Ann Herbert, in a wrongful birth action.  Plaintiff sought recovery for the extraordinary expenses involved with raising her Down’s Syndrome daughter, alleging that defendants negligently failed to inform her of her unborn daughter’s genetic defect until it was legally too late for her to obtain an abortion.  On appeal, plaintiff contends that the circuit court erred in: 
(1) denying her motion for a directed verdict on liability; (2) improperly restricting 
voir
 
dire
; (3) making several evidentiary rulings; (4) instructing the jury on the issue of burden of proof; (5) allowing defense counsel to argue facts not in evidence during closing argument; and (6) denying plaintiff’s motion for a judgment notwithstanding the verdict (judgment n.o.v.) or, in the alternative, a new trial.

On December 21, 1996, plaintiff gave birth to a daughter, Aubria, who suffers from Down’s Syndrome.  Dr. Herbert provided plaintiff’s prenatal care.  On July 22, 1996, per Dr. Herbert’s order, plaintiff was administered an alphafetoprotein (AFP) test, which is a blood test that screens for genetic defects such as Down’s Syndrome.  Dr. Herbert testified that she initially reviewed plaintiff’s AFP test results on July 24, 1996, and told plaintiff the results were fine.  The report of plaintiff’s AFP test stated, however, under the heading “Down’s Syndrome interpretation,” “this risk factor indicates an increased likelihood for Down’s [S]yndrome pregnancy.”  Dr. Herbert re-checked the test results in late October 1996 and discovered her mistake.  On October 30, 1996, Dr. Herbert notified plaintiff of the correct AFP results and set up a consultation for plaintiff with Dr. William Donald, a perinatologist.  Dr. Herbert admitted that she misread the report and that, when she gave plaintiff the correct AFP test results, it was too late for plaintiff electively to terminate the pregnancy.  Dr. Herbert further admitted that she deviated from the standard of care by not informing plaintiff of the correct AFP test results within the time period during which plaintiff electively could have terminated her pregnancy.  

During adverse examination at trial, Dr. Herbert agreed that  prior to October 30, 1996, she never spoke with plaintiff regarding termination of the pregnancy.  Dr. Herbert further testified regarding a conversation she had with plaintiff after plaintiff’s consultation with Dr. Donald.
(footnote: 1)
 During her case-in-chief, Dr. Herbert testified regarding the preceding  conversation, stating that “my very last statement to [plaintiff] was it is my understanding that you would not have altered this pregnancy regardless, and she agreed.”  Dr. Herbert was then asked “did [plaintiff] at any time during that office visit tell you that if she had known of an abnormal triple screen and a higher incidence of Down’s [Syndrome] that she would have terminated the pregnancy,” to which Dr. Herbert responded “no.”

Dr. Robert E. Eilers, plaintiff’s damages expert, testified regarding Aubria’s needs and the estimated costs of meeting those needs through age 18.  Prior to trial, the circuit court, as a discovery sanction, barred Dr. Eilers from testifying as to his most recent examination of Aubria.   

Joseph Thornhill, plaintiff’s husband and Aubria’s father, testified that prior to undergoing the AFP test, he and plaintiff had decided that if the test revealed genetic abnormalities in the fetus it would be aborted.

Plaintiff testified that if she had been informed of the correct AFP test results in July 1996, she would have terminated the pregnancy.  She denied ever telling Dr. Herbert that she would not have terminated the pregnancy.  Plaintiff stated that she works full time as a registered nurse. 

Plaintiff was recalled as a rebuttal witness and stated that Dr. Herbert never asked her what she would have done about continuing the pregnancy if she had known the abnormal results earlier.  She denied telling Dr. Herbert that she would not have terminated the pregnancy even if she had known the results earlier.  At the close of all the evidence, plaintiff moved unsuccessfully for a directed verdict on the issue of liability.  The jury returned a verdict in favor of defendants.  Plaintiff’s post-trial motion was denied.    

I

Plaintiff first contends that the circuit court erred in failing to grant a directed verdict in her favor on the issue of liability.  

A.  Plaintiff argues that she sustained her burden of proof on the issue of proximate cause, as a matter of law, because she established that she had been deprived of the opportunity to have an abortion.  It was undisputed that Dr. Herbert deviated from the standard of care by failing to read the test report correctly.  It was further undisputed that when plaintiff was given the correct test results, it was too late for her legally to terminate her pregnancy in Illinois.  Plaintiff insists she was not required to prove that she would have terminated the pregnancy if timely informed that a genetic defect was present.  It should be noted that despite this argument, plaintiff alleged in her complaint that "[b]ut for the defendants' negligence the plaintiff, MARTIA THORNHILL, would have terminated the congenitally or genetically defective fetus."   

In 
Siemieniec v. Lutheran General Hospital
, 117 Ill. 2d 230, 512 N.E.2d 691 (1987) (
Siemieniec
), the supreme court recognized a cause of action for wrongful birth, which it defined as:

“the claim for relief of parents who allege they would have avoided conception or terminated the pregnancy by abortion but for the negligence of those charged with prenatal testing, genetic prognosticating, or counseling parents as to the likelihood of giving birth to a physically or mentally impaired child.  The underlying premise is that prudent medical care would have detected the risk of a congenital or hereditary genetic disorder either prior to conception or during pregnancy.  As a proximate result of this negligently performed or omitted genetic counseling or prenatal testing, the parents were foreclosed from making an informed decision whether to conceive a potentially handicapped child, or in the event of a pregnancy, to terminate the same.”  
Siemieniec
, 117 Ill. 2d at 235.  

The 
Siemieniec
 court was careful to emphasize the procedural posture of the case, noting that the question was not whether plaintiffs ultimately should prevail in the litigation, but whether the complaint stated a legally cognizable cause of action.  The court accepted as true all well-pleaded facts, including the allegation “that if [plaintiff] had been accurately advised of the chances that her already conceived child would be afflicted with hemophilia, then she would have terminated the pregnancy by abortion.”  
Siemieniec
, 117 Ill. 2d at 234-35.  Further, in recognizing the cause of action, the court noted that “courts which have considered wrongful birth claims have been almost unanimous in their recognition of a cause of action against a physician or other healthcare provider where it is alleged that but for the defendants’ negligence the parents would have terminated the congenitally or genetically defective fetus by abortion.”  
Siemieniec
, 117 Ill. 2d at 256.
(footnote: 2)
 In 
McDaniel v. Ong
, 311 Ill. App. 3d 203, 724 N.E.2d 38 (1999) (
McDaniel
)
, the guardians of a nursing home patient, who suffered from severe developmental disabilities and had given birth to a child after becoming pregnant while in the nursing home, brought a medical malpractice action against the patient’s doctor based on her failure timely to detect the pregnancy.  The plaintiffs claimed that the failure to diagnose the pregnancy sooner precluded the patient from obtaining an abortion.  The appellate court noted that the plaintiffs were required to show proximate cause.  The plaintiffs failed to demonstrate that if the pregnancy had been diagnosed earlier the patient would have obtained an abortion.  After considering the doctrine of loss of chance, the court found that “[t]he fact that [the plaintiffs] have not asserted that different action would have been undertaken to end the pregnancy if the pregnancy had been detected sooner [i.e. an abortion] leaves a gap in the proof as to proximate cause.”  
McDaniel
, 311 Ill. App. 3d at 211.  The appellate court affirmed the grant of summary judgment in favor of the doctor.

Plaintiff seeks to distinguish 
McDaniel
 on its facts, pointing out that it is not a wrongful birth case.  Plaintiff stressed during oral argument, however, that the present case was a lost chance case.  In 
McDaniel
, the appellate court specifically considered the lost chance doctrine and proximate cause in the context of an abortion case.  
McDaniel
, 311 Ill. App. 3d at 209-12.  
McDaniel
’s discussion of proximate cause is instructive for the present case. 

Pursuant to 
Siemieniec
 and 
McDaniel
, in order to establish proximate cause plaintiff was required to plead and prove that, had she known of the correct AFP test results in a timely fashion, she would have terminated the pregnancy.

B.  Plaintiff next argues that the circuit court erred in concluding that a question of fact existed because the evidence supported only one conclusion - that she would have terminated the pregnancy had she timely learned the AFP test results.

A directed verdict is proper only when the evidence, viewed in the light most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict based on that evidence could stand.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 229 N.E.2d 504 (1967) (
Pedrick
).  The denial of a motion for directed verdict is reviewed 
de
 
novo
.  
Schiff v. Friberg
, 331 Ill. App. 3d 643, 771 N.E.2d 517 (2002) (
Schiff
).

Both plaintiff and her husband testified that prior to undergoing the AFP test they had discussed and agreed that if the test revealed a genetic abnormality they would abort the baby.  Plaintiff denied having any conversation with Dr. Herbert in which plaintiff said she would not have terminated the pregnancy.  Dr. Herbert testified that during her conversation with plaintiff in November 1996, plaintiff agreed that she would not have altered the pregnancy regardless of when she learned the correct AFP test results.  Plaintiff argues that the inconsistencies in Dr. Herbert's testimony regarding her conversation with plaintiff render defendants evidence "a mere scintilla" and not sufficient to defeat plaintiff's motion for a directed verdict.  See 
Williams v. Chicago Osteopathic Health Systems
, 274 Ill. App. 3d 1039, 654 N.E.2d 613 (1995).

The inconsistencies in Dr. Herbert's testimony identified by plaintiff did not reduce her evidence to a mere "spark or trace" (Black's Law Dictionary 1347 (7th ed. 1999)), but required a credibility 
evaluation by the factfinder, here the jury.  The jury was presented with the conflicting testimony and made its credibility determinations.  A directed verdict is improper where, as here, “there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome.”  
Maple v. Gustafson
, 151 Ill. 2d 445, 454, 603 N.E.2d 508 (1992) (
Maple
).

C.
  Making arguments identical to the foregoing, plaintiff contends that the circuit court erred in denying her post-trial motion for judgment n.o.v. or, alternatively, a new trial.

The grant or denial of a judgment n.o.v. is reviewed 
de
 
novo
.  
Jones v. Chicago Osteopathic Hospital
, 316 Ill. App. 3d 1121, 738 N.E.2d 542 (2000) (
Jones
).  A judgment n.o.v. is properly entered only in those limited cases where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on the evidence could ever stand."  
Pedrick
, 37 Ill. 2d at 510.  Where the assessment of credibility of witnesses may be decisive to the outcome, it is error to enter a judgment n.o.v.  
Pempek v. Silliker Laboratories, Inc.
, 309 Ill. App. 3d 972, 723 N.E.2d 803 (1999).

A circuit court's decision to grant or deny a new trial will not be disturbed on review absent an abuse of discretion.  
Jones
, 316 Ill. App. 3d at 1125.  A new trial should be granted only when the verdict is against the manifest weight of the evidence, that is
, the opposite conclusion is clearly evident or the jury's findings are unreasonable, arbitrary, or not based on the evidence.  
Maple
, 151 Ill. 2d at 454.

Just as plaintiff's arguments did not support her contention regarding the propriety of a directed verdict, they do not support her contentions regarding judgment n.o.v. or a new trial.
(footnote: 3)
 When viewed in the light most favorable to defendants, the evidence does not so overwhelmingly favor plaintiff that no contrary verdict could ever stand.  Moreover, the verdict was not against the manifest weight of the evidence.  The circuit court did not err in refusing to grant plaintiff a directed verdict on liability, a judgment n.o.v., or a new trial.

II

Plaintiff next contends that she is entitled to a new trial because the circuit court’s restriction on 
voir
 
dire
 constituted reversible error.  Specifically, plaintiff argues that the court erred when it barred her from asking prospective jurors whether they felt it was wrong to terminate a pregnancy because the fetus had a genetic defect.  

The purpose of 
voir
 
dire
 is to assure the selection of an impartial panel of jurors, persons who are free from bias or prejudice.  
Kingston v. Turner
, 115 Ill. 2d 445, 505 N.E.2d 320 (1987) (
Kingston
).  Pursuant to Supreme Court Rule 234 (177 Ill. 2d R. 234), the primary responsibility for initiating and conducting the 
voir
 
dire
 examination lies with the trial judge and the scope and extent of the examination rests within his or her discretion.  
Kingston
, 115 Ill. 2d at 464.  The standard for determining whether the circuit court has abused its discretion is whether the 
voir
 
dire
 allowed created a reasonable assurance that prejudice would be discovered if present.  
Friedman v. Park District of Highland Park
, 151 Ill. App. 3d 374, 502 N.E.2d 826 (1986) (
Friedman
).  When questioning of prospective jurors is turned over to counsel, it is properly within the scope of questioning to expose any hidden bias or prejudice of a prospective juror.  
Rub v. Consolidated Rail Corp.
, 331 Ill. App. 3d 692, 771 N.E.2d 1015 (2002).  An abuse of discretion can be established where the court refused certain supplemental questions by counsel which directly impact on a specific bias or prejudice.  
Friedman
, 151 Ill. App. 3d at 382.

Plaintiff points to three specific instances where the circuit court sustained defense objections during 
voir
 
dire
.  First, the court, prior to the start of 
voir
 
dire
, denied plaintiff’s request to ask prospective jurors “whether if they were in a situation where they were pregnant or their wife was pregnant or their daughter was pregnant, and they learned that the child was likely to be born with a genetic defect, a significant genetic defect such as Down['s] Syndrome, would they have any moral or philosophical opposition to termination of the pregnancy.”  
The court properly rejected plaintiff’s proposed question as an inappropriate attempt to put the potential jurors in plaintiff’s shoes.  
Gasiorowski v. Homer
, 47 Ill. App. 3d 989, 994, 365 N.E.2d 43 (1977) (“[q]uestions which tend to put prospective jurors in the place of the parties to the litigation open a wide range of possibilities for indoctrination or pre-education of jurors, and lend themselves all too easily to attempts to obtain some positive indication as to which party the jurors might favor.”)
   

Second, plaintiff attempted to ask potential juror Paul Herbert whether he thought “that a person who terminates a pregnancy because the baby has Down’s Syndrome has committed a sin or a wrong against God’s law?”  Prior to this question, which was not allowed, plaintiff was permitted to ask Herbert “[d]o you have a quarrel with a woman’s decision to terminate a pregnancy because genetic testing shows that there is a significant congenital defect or developmental problem?”  Plaintiff exercised a peremptory challenge to excuse Paul Herbert; no prejudice, therefore, ensued.

Third, the court sustained an objection to the following question, asked of potential juror Peggy Snodgrass, on the ground that the subject had already been covered: “Do you have any problem with a woman’s right to terminate a pregnancy if prenatal genetic testing indicates that there is a probability or likelihood of significant birth defect?”  Plaintiff cannot establish any prejudice from this restriction on 
voir
 
dire
, since the defense later exercised a peremptory challenge against potential juror Snodgrass.         

The record as a whole demonstrates that the circuit court questioned each potential juror thoroughly regarding the abortion issue.  The court excused 11 potential jurors based upon their opinions regarding abortion.  On several occasions throughout 
voir
 
dire
, plaintiff was allowed to ask potential jurors about their views on abortion in the specific circumstances relevant to this case.   Plaintiff simply did not attempt to ask most of the potential jurors about their views on abortion in the specific circumstances relevant to the case.

The circuit court did not abuse its discretion with regard to  
voir
 
dire
.

III

Plaintiff next contends that she was denied a fair trial due to several erroneous evidentiary rulings by the circuit court. 

A.  Plaintiff argues that the circuit court abused its discretion by allowing Dr. Herbert to testify for the first time at trial, in violation of former Supreme Court Rule 213 (177 Ill. 2d R. 213) (former Rule 213), that plaintiff had told her that even if she had known of the correct results sooner, she would not have terminated the pregnancy.  Defendants respond that Dr. Herbert’s trial testimony was consistent with her deposition testimony.  Admission of evidence pursuant to former Rule 213 is within the circuit court’s discretion and the court’s ruling will not be reversed absent an abuse of that discretion.  
Department of Transportation v. Crull
, 294 Ill. App. 3d 531, 690 N.E.2d 143 (1998) (
Crull
).

At her deposition Dr. Herbert stated that at the next office visit after plaintiff’s appointment with Dr. Donald she said to plaintiff, “Dr. Donald called me and stated that he performed an ultrasound that said that the baby was grossly within normal limits.  That he did not perform the amniocentesis and that your wishes were to not alter or not alter the pregnancy” and plaintiff said “yes.”  Dr. Herbert was also asked: “Q.  Did [plaintiff] tell you that she would not have a termination of the pregnancy if it was available to her?  A.  She stated she would not have altered the pregnancy.”

According to plaintiff, the conversations which Dr. Herbert revealed during her deposition regarding termination related to plaintiff’s intentions after October 30, 1996, when it was legally impossible to electively terminate the pregnancy.  Defendants argue that a reasonable interpretation of the testimony is that it addressed plaintiff’s wishes when termination was available, including July 1996.  A circuit court’s comparison of trial testimony to pretrial disclosures is reviewed for abuse of discretion and such abuse occurs only if no reasonable person could agree with the position the court takes.  See 
Lawler v. MacDuff
, 335 Ill. App. 3d 144, 779 N.E.2d 311 (2002).   No violation of former Rule 213 is apparent and the court did not abuse its discretion in allowing the disputed testimony.
(footnote: 4) 

Plaintiff further argues that the circuit court erred in ruling that Dr. Herbert was not impeached.  According to plaintiff, Dr. Herbert testified inconsistently on adverse and cross-examinations as to which time period her conversation with plaintiff pertained and whether plaintiff made a general or specific statement.
(footnote: 5)  The circuit court sustained defendants' objection, finding this testimony not impeaching.  No testimony was stricken, however, and the jury was enabled to consider all of Dr. Herbert’s testimony regarding her conversation with plaintiff.  Moreover, plaintiff's counsel thoroughly argued Dr. Herbert's credibility and the alleged discrepancies in her testimony regarding her conversation with plaintiff during closing argument. 

The circuit court has discretion to allow the admission of evidence for attempted impeachment purposes and a reviewing court will not disturb that decision absent an abuse of discretion.  
Schiff
, 331 Ill. App. 3d at 656.  The court did not abuse its discretion in allowing this evidence to be decided by the jury.

B.  Plaintiff next contends that the circuit court erred in allowing defendants to impeach her on collateral issues regarding her 1991-1993 tax returns.  After plaintiff stated on cross-examination that she had never cared for or had custody of anyone else’s children, plaintiff was confronted with her 1991-1993 tax returns on which she had claimed her two “goddaughters” as dependents and indicated that they had lived with her during those years.  According to plaintiff, this evidence was irrelevant to any issue in the case and was highly prejudicial because defendants suggested that she was a tax cheater. 

The testimony did not suggest that plaintiff was a tax cheater; rather, it suggested that plaintiff was untruthful when she testified that she had never cared for or had custody of anyone else’s children, but in fact had claimed her two "goddaughters" as dependents on her federal income tax returns in 1991 through 1993.  The evidence was relevant to the issue of plaintiff’s credibility, which was a central issue in the case.  Plaintiff was given ample opportunity to explain the apparent inconsistencies and rehabilitate herself.

The circuit court did not abuse its discretion in admitting this evidence.
(footnote: 6) 

C.  Plaintiff next argues that the circuit court erred in allowing  impeachment of plaintiff concerning her views on having a second child.
(footnote: 7)  On cross-examination, plaintiff responded “no” when  asked “and it is true, is it not ma’am, that after you had Aubria you arrived at the decision that you were not going to have any more children; isn’t that correct?”  Plaintiff was then confronted with her deposition testimony that she was not going to have any more children.  Specifically, plaintiff argues that this testimony was not impeaching because it did not discredit her testimony on a material matter.

The evidence was relevant as it demonstrated that Aubria was not the burden that plaintiff claimed her to be.  One of plaintiff's stated reasons for planning not to have more children was that Aubria required so much time and effort that there would be no time left to raise another child.  The circuit court did not abuse its discretion in admitting this evidence.
(footnote: 8)

D.  Plaintiff argues that the circuit court abused its discretion when it (1) improperly restricted the testimony of Dr. Eilers and (2) barred Aubria from appearing in the courtroom.

1.  Dr. Eilers initially saw Aubria in March of 2000 and prepared a detailed report regarding his findings.  Dr. Eilers was deposed in September 2000.  After trial started, plaintiff’s counsel faxed defense counsel a letter from Dr. Eilers memorializing his findings after a second evaluation of Aubria, which was conducted in November 2000.  This was the first notice defense counsel received regarding the second evaluation.  The circuit court found this to be a “clear violation of Supreme Court Rule 213" and barred Dr. Eilers from testifying regarding the November 2000 evaluation of Aubria.  

Plaintiff argues that this restriction on Dr. Eilers’ testimony was improper, citing 
Conners v. Poticha
, 293 Ill. App. 3d 944, 689 N.E.2d 313 (1997) (
Conners
).  In 
Conners
, an expert offered previously undisclosed additional reasons and examples to explain his causation theory.  The court, applying former Supreme Court Rule 220, found that the expert's trial testimony represented an elaboration or refinement of his well-established theory on causation and that the previously undisclosed reasons and examples were fairly within the scope of facts known and opinions disclosed before trial.  

Plaintiff argues that Dr. Eilers' testimony regarding his most recent evaluation of Aubria was within the scope of the facts and opinions disclosed before trial.  Dr. Eilers was not going to testify as to any new disabilities revealed by the November 2000 evaluation, nor had that evaluation caused him to change his previous opinions.  The November 2000 evaluation merely confirmed for Dr. Eilers that there were no changes and no new needs for Aubria. 

The 
Connors
 decision is distinguishable.  First, and significantly, it involved former Supreme Court Rule 220, not former Rule 213.  As stated in 
Crull
,
 "Rule 213 establishes more exacting standards regarding disclosure than did Supreme Court Rule 220 ***, which formerly governed expert witnesses.  Trial courts should be more reluctant under Rule 213 than they were under former Rule 220 (1) to permit the parties to deviate from the strict disclosure requirements, or (2) not to impose severe sanctions when such deviations occur.  Indeed, we believe one of the reasons for new Rule 213 was the need to require stricter adherence to disclosure requirements."  294 Ill. App. 3d at 535-539.  Second, 
Conners
 did not involve a subsequent physical examination that confirmed the expert's opinions.

Defendant cites 
Copeland v. Stebco Products Corp.
, 316 Ill. App. 3d 932, 738 N.E.2d 199 (2000) (
Copeland
), where the appellate court found that the plaintiff violated former Rule 213 by failing to disclose a test performed by her expert witness after his deposition in the case was taken.  The court rejected the plaintiff's argument that there was no violation of former Rule 213 because the expert's opinions did not change after the undisclosed tests.  According to the court, that argument misinterpreted the strict disclosure requirements of former Rule 213.  

Former Rule 213 required that, upon written interrogatory, a party must disclose the subject matter, conclusions, opinions, bases for the opinions, qualifications, and all reports of a witness who will offer any opinion testimony and seasonably supplement any previous answers when additional information becomes known.  177 Ill. 2d R. 213.  Former Rule 213 is mandatory and strict compliance is required.  
Crull
, 294 Ill. App. 3d at 537.   

Admission of evidence pursuant to former Rule 213 is within the circuit court’s discretion and the court’s ruling will not be reversed absent an abuse of discretion.  
Crull
, 294 Ill. App. 3d at 537.  The circuit court did not abuse its discretion in barring Dr. Eilers' testimony regarding his most recent evaluation of Aubria.   

2.  Citing no authority, plaintiff next argues that the circuit court erred in barring Aubria from appearing in the courtroom during the trial where plaintiff sought to use Aubria as a demonstrative exhibit.  Plaintiff admits that she never disclosed this intent to defendants prior to trial, but  argues that, because Aubria was not a witness, she did not have to be disclosed under former Rule 213.  Plaintiff contends that her ability to present her claim for damages was prejudiced because she was unable to show the jury the handicaps associated with a Down's Syndrome child.

Admissibility of evidence is within the broad discretion of the circuit court and its determination will not be reversed absent an abuse of that discretion.  
Schuler v. Mid-Central Cardiology
, 313 Ill. App. 3d 326, 729 N.E.2d 536 (2000).  The court did not abuse its discretion in barring the use of Aubria as a demonstrative exhibit where plaintiff never disclosed her intention to do so prior to trial and, in any event, plaintiff was able to present substantial testimony regarding Aubria's disabilities.  See 
Seward v. Griffin
, 116 Ill. App. 3d 749, 452 N.E.2d 558 (1983).

E.  Plaintiff argues that the circuit court abused its discretion in refusing to allow her to present testimony to the jury regarding (1) plaintiff's future lost wages, (2) Aubria's future lost wages,
(footnote: 9) and (3) extraordinary expenses associated with rearing Aubria  until the age of 21.

With regard to plaintiff’s future lost wages, plaintiff sought to introduce evidence of her desire to stop working so that she could stay home and care for Aubria full time.  She claimed that the salary she would lose if she were to do so would be recoverable as lost wages.  Plaintiff cites no authority to support this claim.  The circuit court excluded the evidence, finding there were no lost wages.  Plaintiff admitted on direct examination that she has not quit her job and still works full time.  Moreover, she presented no evidence that she now had to quit her job in order to care for Aubria.  There can be no recovery of speculative or unproved damages.  Damages are speculative when uncertainty exists as to the fact of their existence.  
Goran v. Glieberman
, 276 Ill. App. 3d 590, 659 N.E.2d 56 (1995).     

The circuit court did not err in  excluding evidence of plaintiff's speculative future lost wages.

Plaintiff further argues that the circuit court erred in refusing to allow her to present evidence of the extraordinary expenses associated with rearing Aubria until the age of 21.  The record is devoid of any attempt by plaintiff to introduce such evidence.
(footnote: 10)
 In 
Siemieniec
, the supreme court found that in a wrongful birth action the parents’ damages are limited to “the extraordinary expenses - medical, hospital, institutional, educational and otherwise - which are necessary to properly manage and treat the congenital or genetic disorder.”  
Siemieniec
, 117 Ill. 2d at 260.  The court recognized that some courts also have permitted recovery of the extraordinary costs incurred after the child has reached the age of majority.  The court then noted that “the plaintiffs here seek to recover only those extraordinary expenses that will be incurred prior to the child’s reaching his majority.”  
Siemieniec
, 117 Ill. 2d at 260.  In Illinois the age of majority is 18 years old.  
In re Marriage of Ferraro
, 211 Ill. App. 3d 797, 570 N.E.2d 636 (1991).    

There was no error with regard to evidence of extraordinary expenses of raising Aubria until the age of 21 where the record reveals that plaintiff never attempted to present such evidence.

IV

Plaintiff next contends that the circuit court erred in instructing the jury.  The circuit court’s determination as to the instructions to be given to the jury will not be disturbed absent an abuse of discretion.  
Dabros v. Wang
, 243 Ill. App. 3d 259, 611 N.E.2d 1113 (1993) (
Dabros
).  The test for determining whether the  court abused its discretion in instructing the jury is whether, considered as a whole, the instructions are sufficiently clear and fairly and accurately state the applicable law.  
Dabros
, 243 Ill. App. 3d at 267.

Specifically, plaintiff argues that the circuit court erred in giving defendants’ modified burden of proof instruction which states, in pertinent part: “the plaintiff has the burden of proving each of the following propositions: First, that the plaintiff sustained damages; Second, that the plaintiff would have terminated her pregnancy had the defendants advised her of the abnormal genetic test results in a timely fashion."
(footnote: 11)  According to plaintiff, this instruction was confusing to the jury because it failed to delineate the relevant time period.  Plaintiff further claims that the instruction misstates the law because plaintiff does not have the burden of proving that she would have terminated her pregnancy had she been advised of the abnormal test results in a timely fashion.  As discussed at length in Point I, 
Siemieniec
 and 
McDaniel
 make clear that the plaintiff in a wrongful birth case does have the burden of proving that she would have terminated the pregnancy had she been advised of the abnormal test results in a timely fashion.

The circuit court did not abuse its discretion in instructing the jury on the burden of proof.  

V

Lastly, plaintiff urges error in that the circuit court allowed defense counsel to argue facts not in evidence during closing argument.

Counsel is afforded wide latitude in closing argument.  
Ellington v. Bilsel
, 255 Ill. App. 3d 233, 626 N.E.2d 386 (1993).  Counsel may comment on the evidence, as well as any reasonable inference that can be drawn from the evidence.  
Copeland
, 316 Ill. App. 3d at 947.  Absent an abuse of discretion, the circuit court's determination as to the propriety of closing argument will not be disturbed on review.  
Becht v. Palac
, 317 Ill. App. 3d 1026, 740 N.E.2d 1131 (2000).   

Plaintiff complains that defense counsel’s closing statement that, “Dr. Lazar got up and told you how many times he’s testified, where he’s testified and how much he’s been compensated for testifying,” was not supported by the evidence.  There is no record support for plaintiff's conclusion.  Indeed, Dr. Richard Lazar stated that he had testified in court generally two to four times  per year and he has been called to testify for both plaintiffs and defendants “in this building.”  Dr. Lazar estimated that in the past year he earned between $90,000 and $120,000 for time spent either testifying at depositions, reviewing records, or testifying at trials.  Dr. Lazar further noted that he was compensated for his time in this case at a rate of $450 per hour for reviewing records, court documents, and depositions; $550 per hour for testifying at a deposition; and $650 per hour for trial testimony.

Defense counsel’s statements during closing argument were supported by the evidence.   

Accordingly, for the reasons set forth above, no bases appear in this record for disturbing the jury verdict in this case and, accordingly, the judgment of the circuit court of Cook County must be affirmed.

Affirmed.

THEIS, P.J. and KARNEZIS, J., concur.

FOOTNOTES
1:
That conservation was reported by Dr. Herbert as follows:  

“Q. After [plaintiff] had her consultation with Dr. Donald, a perinatologist, you had a conversation with her, correct? 

A.  Correct.

Q.  She told you that she would not alter the pregnancy, correct?

A.  Correct.

Q.  That statement was made after October 30th, 1996; isn’t that true?

A.  True.

Q.  [Plaintiff] never said to you, Dr. Herbert, “You know, Dr. Herbert, if I would have been told in a timely fashion that my July 22, 1996 alpha fetoprotein was abnormal and showed an increased likelihood of Down’s [S]yndrome, I wouldn’t have terminated the pregnancy anyway,” did she?

A.  No, she did not.

Q.  Her comments to you about not altering the pregnancy were related to that time period, October 1996 and thereafter, isn’t that true?

A.  I do not know if it was that time period.  It was a general statement.”

2:
Other jurisdictions also recognize that to establish proximate cause in a wrongful birth action, the parents must establish that but for the physician's negligence, they would have terminated the pregnancy or avoided conception.  See 
Keel v. Banach
, 624 So. 2d 1022, 1027 (Ala. 1993) ("[i]n order to establish causation, it is necessary for the plaintiff to show that, had the defendant not been negligent, the plaintiff would have been aware of the possibility that the child would be seriously defective, and either the child would not have been conceived or the pregnancy would have been terminated"); 
Canesi v. Wilson
, 730 A.2d 805 (N.J. 1999) ("the test of proximate causation is satisfied by showing that an undisclosed fetal risk was material to a woman in her position; the risk materialized, was reasonably foreseeable and not remote in relation to the doctor's negligence; and, had plaintiff known of that risk, she would have terminated her pregnancy."). 

3:
Moreover, as defendants point out, aside from Dr. Herbert's testimony regarding her conversation with plaintiff, there was other circumstantial evidence that plaintiff would not have terminated the pregnancy if given the results in a timely fashion.  She continued to see Dr. Herbert for the duration of her pregnancy and delivery despite Dr. Herbert's error.  It was undisputed that plaintiff expressed no desire to abort when she learned of the genetic defect.

4:
Also without merit is plaintiff's argument that Dr. Herbert's testimony regarding her conversation with plaintiff was not relevant to the issue of proximate cause because the only proper inquiry regarding proximate cause was whether plaintiff was denied the opportunity to make an informed decision whether to terminate the pregnancy.  As discussed at length in Point I, plaintiff was required to plead and prove that had she known of the correct AFP test results in a timely fashion, she would have terminated the pregnancy.  
Siemieniec
, 117 Ill. 2d at 235; 256.  Therefore, Dr. Herbert's testimony regarding her conversation with plaintiff was relevant to the issue of proximate cause.

5:
On cross-examination, plaintiff's counsel questioned Dr. Herbert, as follows:

"Q.  Well, Doctor, when she said she wouldn't alter the pregnancy, you don't know what time frame she was talking about, whether it was October, 1996 or July 1996.  You don't know, do you?

A.  No.  I asked her a specific question.

* * *

Q.  Her comments to you about not altering the pregnancy, you don't know whether her comments to you about not altering the pregnancy were related to that time period, October, 1996 or thereafter?

* * *

Q.  It was a general statement, isn't that true, Dr. Herbert?

A.  She did not make a statement.

Q.  Is that true, Dr. Herbert?

* * *

A.  No, it was not a general statement."  

Plaintiff's counsel then attempted to impeach Dr. Herbert with her previous trial testimony:

Q.  Did you give this answer to this question under oath on Friday afternoon?  Question.  Her comments to you about not altering the pregnancy were related to that time period, October 1996 and thereafter, isn't that true?  Answer.  I do not know if it was that time period.  It was a general statement."  

6:
Without support is plaintiff's further argument that defense counsel’s comment during closing argument that “[s]he claims two nieces as dependents on federal income tax returns for three years in a row and told the federal government that they were her daughters”  was not supported by the evidence because there was nothing to show that plaintiff had violated IRS rules.  On cross-examination, plaintiff was shown her 1991-1993 tax returns and she admitted that for those years she claimed her two "goddaughters" as dependents on her federal income tax returns and that she listed them as her daughters on those forms.  As discussed above, this evidence properly was admitted for impeachment purposes.

7:
Plaintiff gave birth to a second healthy child who was five months old at the time of trial.

8:
Also without merit is plaintiff's argument that defense counsel’s comment during closing argument that he impeached plaintiff with the testimony from her deposition regarding her intention not to have more children after Aubria, was not supported by the evidence.  Although not raised by either party, the record reveals that plaintiff has waived this argument by failing to object to this statement during closing argument.  
Diaz v. Kelley
, 275 Ill. App. 3d 1058, 1072, 657 N.E.2d 657 (1995).  Waiver aside, plaintiff argues that this evidence was not impeaching.  As discussed above, the evidence properly was admitted for impeachment purposes.

9:
The record is devoid of any attempt by plaintiff to present evidence of Aubria's future lost wages.  Any such evidence would be irrelevant in any case as Aubria is not a party to this lawsuit.

10:
It appears that defendants’ motion 
in
 
limine
 on this issue was granted without objection.  Although the motion itself does not appear in the record, the following argument on the motion does:

“[Defense counsel]: Okay.  No 5 is the law Barb.  It’s just a motion that we can not testify as to her needs past age 18.

[Plaintiff’s counsel]: That’s the law.

THE COURT: Granted.  No objection.

[Plaintiff’s counsel]: Although I may make an offer of proof.”   Plaintiff’s counsel reiterated a second time “I probably will want to make an offer of proof outside the presence of the jury solely to preserve this issue for a potential appeal.”  No such offer of proof appears in the record.  

11:
Plaintiff contends that the circuit court erred in giving defendants’ tendered instruction on extraordinary expenses because the instruction failed to advise the jury that it could consider (1) the extraordinary expenses associated with rearing Aubria until the age of 21 and (2) plaintiff's "future lost wages" that would be incurred if plaintiff quit her job to stay home and care for Aubria full time.  As discussed above, such damages were not available to plaintiff in this case.  Therefore, the instruction regarding extraordinary expenses was an appropriate statement of the law.